**FORMOSA PLASTICS CORPORATION USA and Formosa Plastic Corporation, Texas, Petitioners,**

v.

**PRESIDIO ENGINEERS AND CONTRACTORS, INC., Respondent.**

No. 95–1291.

Supreme Court of Texas.

Argued Oct. 1, 1996.

Decided Jan. 16, 1998.

Dissenting Opinion to Original Opinion of July 9, 1997.

Rehearing Overruled March 13, 1998.

Molly H. Hatchell, Andy G. Navarro, Michael A. Hatchell, Tyler, Joe R. Greenhill, Bob E. Shannon, Joseph R. Knight, Austin, for petitioners.

Robert P. Houston, Cynthia T. Sheppard, John Griffin, Jr., Victoria, William Powers, Jr., for respondent.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, ENOCH, OWEN and HANKINSON, Justices, join.

We overrule Respondent's motion for rehearing and motion for voluntary remittitur. We withdraw our opinion of July 9, 1997, and substitute the following in its place.

In *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex.1991), this Court held that a cause of action for negligence could not be based on an allegation that a party had negligently failed to perform a contract because such a claim sounded in contract, not in tort. Today we are requested to apply a similar analysis to preclude a recovery in tort for a fraudulent inducement of contract claim. We decline to do so, holding instead that our *DeLanney* analysis is not applicable to such a claim. However, because there is no probative evidence to support the entire amount of damages awarded by the trial court, we reverse the judgment of the court of appeals and remand the case to the trial court for a new trial.

## I

In 1989, Formosa Plastics Corporation began a large construction "expansion project" at its facility in Point Comfort, Texas. Presidio Engineers and Contractors, Inc. received an "Invitation to Bid" from Formosa on that part of the project requiring the construction of 300 concrete foundations. The invitation was accompanied by a bid package containing technical drawings, specifications, general information, and a sample contract. The bid package also contained certain representations about the foundation job. These representations included that (1) Presidio would arrange and be responsible for the scheduling, ordering, and delivery of all materials, including those paid for by Formosa; (2) work was to progress continually from commencement to completion; and (3) the job was scheduled to commence on July 16, 1990, and be completed 90 days later, on October 15, 1990.

Presidio's president, Bob Burnette, testified that he relied on these representations in preparing Presidio's bid. Because the bid package provided that the contractor would be responsible for all weather and other unknown delays, he added another 30 days to his estimate of the job's scheduled completion date. He submitted a bid on behalf of Presidio in the amount of $600,000. Because Presidio submitted the lowest bid, Formosa awarded Presidio the contract.

The job was not completed in 120 days. Rather, the job took over eight months to complete, more than twice Burnette's estimate and almost three times the scheduled time provided in the bid package. The delays caused Presidio to incur substantial additional costs that were not anticipated when Presidio submitted its bid.

Presidio asserted a claim under paragraph 17 of the parties' contract, which provided that Formosa was liable for all delay damages within the "control of the owner." Formosa countered that, while it may have been liable for some of the delays, it was not responsible for all of the delays and losses asserted by Presidio. Because the parties were not able to resolve their dispute, Presidio sued Formosa for breach of contract and breach of a duty of good faith and fair dealing. Presidio also brought fraudulent inducement of contract and fraudulent performance of contract claims based on representations made by Formosa that Presidio discovered were false after commencing performance of the contract. Formosa counterclaimed for breach of contract, urging that Presidio had not properly completed some of its work.

Presidio presented evidence to the jury that Formosa had an intentional, premeditated scheme to defraud the contractors working on its expansion project. Under this scheme, Formosa enticed contractors to make low bids by making misrepresentations in the bid package regarding scheduling, delivery of materials, and responsibility for delay damages. Jack Lin, the director of Formosa's civil department, admitted that Formosa acted deceptively by representing in the bid package that the contractors would have the ability to schedule the delivery of concrete when in truth Formosa had secretly decided to set up its own delivery schedule in order to save money. Formosa also scheduled multiple contractors, doing mutually exclusive work, to be in the same area at the same time. For instance, Formosa scheduled another contractor to install underground pipe in Presidio's work area at the same time that Presidio was supposed to be pouring foundations. Thomas Pena, Formosa's inspector, admitted that Formosa knew that contractors would be working right on top of each other, but this information was not passed on to the contractors. Of course, once the contractors were on the job, they would realize that, due to such unexpected delays caused by Formosa, their bids were inadequate. But when the contractors requested delay damages under the contract, Formosa would rely on its superior economic position and offer the contractors far less than the full and fair value of the delay damages. In fact, Ron Robichaux, head of Formosa's contract administration division, testified that Formosa, in an effort to lower costs, would utilize its economic superiority to string contractors along and force them to settle. Robichaux added that "if [a contractor] continued to complain then [Formosa] would take the contract from him and make sure he loses his money." Under this scheme, Formosa allegedly stood to save millions of dollars on its $1.5 billion expansion project.

The jury found that Formosa defrauded Presidio and awarded Presidio $1.5 million. The jury also found that Formosa breached a duty of good faith and fair dealing and awarded Presidio $1.5 million as a result. Based on its findings that Formosa's fraud and breach of a duty of good faith and fair dealing were done willfully, wantonly, intentionally, or with conscious indifference to the rights of Presidio, the jury further awarded Presidio $10 million as exemplary damages. Additionally, the jury found that Formosa breached its contract with Presidio, causing $1.267 million in damages. On the other hand, the jury also concluded that Presidio did not fully comply with the contract, causing Formosa $107,000 in damages.

The trial court suggested a remittitur reducing the tort damages to $700,000 and the contract damages to $467,000, which Presidio accepted. Based on Presidio's election to recover tort rather than contract damages, the trial court rendered a judgment in favor of Presidio for $700,000 in actual damages, $10 million in punitive damages, prejudgment interest, attorney's fees, and costs. The damages caused by Presidio's breach of contract were offset against the judgment.

Formosa appealed the judgment to the court of appeals, which affirmed the judgment of the trial court. 941 S.W.2d 138. We granted Formosa's application for writ of error to consider, among other things, whether Presidio has a viable fraud claim when it suffered only economic losses related to the performance and subject matter of the parties' contract, whether there was legally sufficient evidence of fraud, and whether there was legally sufficient evidence to support the entire amount of damages awarded. We conclude that, while Presidio has a viable fraud claim, it failed to present legally sufficient evidence to support the entire amount of damages awarded. Accordingly, we reverse the judgment of the court of appeals and remand the cause for a new trial.

## II

Formosa asserts that Presidio's fraud claim cannot be maintained because "Presidio's losses were purely economic losses related to performance and the subject matter of the contract." Formosa contends that our decision in *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex.1991), compels us to examine the substance of Presidio's tort claim to determine whether the

claim is, in reality, a re-packaged breach of contract claim. Formosa urges that, in making this determination, we should analyze the nature of the alleged injury, the source of the breached duty, and whether the loss or risk of loss is contractually contemplated by the parties. Presidio counters that a *DeLanney*-type analysis does not apply to fraud claims. For the reasons discussed below, we agree with Presidio.

## A

Over the last fifty years, this Court has analyzed the distinction between torts and contracts from two different perspectives. At first, we merely analyzed the source of the duty in determining whether an action sounded in tort or contract. For instance, in *International Printing Pressmen & Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735 (1946), this Court held that " 'an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law.' " *Id.* (quoting 1 C.J.S. *Actions* § 44).

Later, we overlaid an analysis of the nature of the remedy sought by the plaintiff. In *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986), we recognized that, while the contractual relationship of the parties could create duties under both contract law and tort law, the "nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 618. Because a mere breach of contract cannot support recovery of exemplary damages, and because the plaintiffs did not "prove a distinct tortious injury with actual damages," we rendered judgment that the plaintiffs take nothing on their exemplary damages claim. *Id.*

We analyzed both the source of the duty and the nature of the remedy in *DeLanney*. DeLanney asserted that Bell was negligent in failing to publish his Yellow Pages advertisement as promised. The trial court rendered judgment for DeLanney, and the court of appeals affirmed. This Court, however, held that the claim sounded in contract, not negligence, and accordingly rendered judgment in favor of Bell. We provided the following guidelines on distinguishing contract and tort causes of action:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.

*DeLanney*, 809 S.W.2d at 494. In applying these guidelines, we first determined that Bell's duty to publish DeLanney's advertisement arose solely from the contract. We then concluded that DeLanney's damages, lost profits, were only for the economic loss caused by Bell's failure to perform the contract. Thus, while DeLanney pleaded his action as one in negligence, he clearly sought to recover the benefit of his bargain with Bell such that Bell's failure to publish the advertisement was not a tort. *Id.* at 495.

Most recently, in *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13–14 (Tex.1996), we considered the intersection of the Deceptive Trade Practices Act and contract law. Ace Sign sued Bell for omission of a yellow pages advertisement, alleging negligence, DTPA misrepresentation, and breach of contract. Bell stipulated the contract breach, and was granted summary judgment on Ace Sign's DTPA and negligence claims. The court of appeals reversed the trial court's judgment on the DTPA claim, but this Court then reversed the court of appeals. We noted that, under *DeLanney*, we were to consider "both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Id.* at 12. We then examined the

relationship of the DTPA and contract law, concluding that an allegation of mere breach of contract, without more, does not violate the DTPA. We held that, because the alleged representations of Bell were simply representations that it would fulfill its contractual duty to publish the advertisement, and a mere failure to later perform a promise does not constitute misrepresentation, Crawford could only recover in contract.

## B

Several appellate courts have considered the application of our decisions in *DeLanney* and *Reed* to fraudulent inducement claims. Some of these courts have concluded that these decisions mandate that tort damages are not recoverable for a fraudulent inducement claim unless the plaintiff suffers an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim. *Grace Petroleum Corp. v. Williamson*, 906 S.W.2d 66, 68–69 (Tex.App.—Tyler 1995, no writ); *Parker v. Parker*, 897 S.W.2d 918, 924 (Tex. App.—Fort Worth 1995, writ denied); *Barbouti v. Munden*, 866 S.W.2d 288, 293–94 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 170 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 719–20 (Tex.App.—Dallas 1989, writ denied); *Hebisen v. Nassau Dev. Co.*, 754 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Allen v. Allen*, 751 S.W.2d 567, 574–75 (Tex.App.—Houston [14th Dist.] 1988, writ denied). The United States Court of Appeals for the Fifth Circuit has also adopted this view of Texas law. *See, e.g., Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 527–28 (5th Cir. 1996); *but see Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 276 (5th Cir.1989). Other Texas appellate decisions, however, have rejected the application of *DeLanney* and *Reed* to preclude the recovery of tort damages for fraudulent inducement claims. *American Nat'l Ins. Co. v. International Bus. Mach. Corp.*, 933 S.W.2d 685, 687 (Tex.App.—San Antonio 1996, writ denied); *Beneficial Personnel Servs. v. Rey*, 927 S.W.2d 157, 167–68 (Tex.App.—El Paso

1996), *vacated pursuant to settlement without reference to the merits*, 938 S.W.2d 717 (Tex.1997); *Peco Constr. Co. v. Guajardo*, 919 S.W.2d 736, 738–39 (Tex.App.—San Antonio 1996, writ denied); *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 839 S.W.2d 866, 875–76 (Tex.App.—Austin 1992), *rev'd on other grounds*, 896 S.W.2d 156 (Tex.1995); *Schindler v. Austwell Farmers Coop.*, 829 S.W.2d 283, 286, 289–91 (Tex.App.—Corpus Christi), *aff'd as modified on other grounds*, 841 S.W.2d 853 (Tex.1992); *Matthews v. Am-West Sav. Ass'n*, 825 S.W.2d 552, 554 (Tex. App.—Beaumont 1992, writ denied).

We too reject the application of *DeLanney* to preclude tort damages in fraud cases. Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. As a rule, a party is not bound by a contract procured by fraud. *E.g., Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex.1995); *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985); *Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 491 (Tex.1978); *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 239 (1957). Moreover, it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself. *See Dallas Farm Mach.*, 307 S.W.2d at 239 (" '[T]he law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it.' ") (quoting *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 558 (1941)).

This Court has also repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract. For example, in *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992), we noted: "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." Similarly, in *Spoljaric v. Percival Tours*,

*Inc.*, 708 S.W.2d 432, 434 (Tex.1986), we held that a fraud claim could be maintained, under the particular facts of that case, for the breach of an oral agreement to pay a bonus because a "promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Accord T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971).

Our prior decisions also clearly establish that tort damages are not precluded simply because a fraudulent representation causes only an economic loss. Almost 150 years ago, this Court held in *Graham v. Roder*, 5 Tex. 141, 149 (1849), that tort damages were recoverable based on the plaintiff's claim that he was fraudulently induced to exchange a promissory note for a tract of land. Although the damages sustained by the plaintiff were purely economic, we held that tort damages, including exemplary damages, were recoverable. Since *Graham*, this Court has continued to recognize the propriety of fraud claims sounding in tort despite the fact that the aggrieved party's losses were only economic losses. *See, e.g., Spoljaric*, 708 S.W.2d at 436; *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 583 (Tex.1963); *cf.* Tex.Civ.Prac. & Rem.Code § 41.003(a)(1) (expressly authorizing exemplary damages for fraud without making any exception based on the type of loss sustained by the injured party). Moreover, we have held in a similar context that tort damages were not precluded for a tortious interference with contract claim, notwithstanding the fact that the damages for the tort claim compensated for the same economic losses that were recoverable under a breach of contract claim. *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990).

◼ Accordingly, tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement. We therefore disapprove of the following appellate court opinions to the extent that they hold that tort damages cannot be recovered for a fraudulent inducement claim absent an injury that is distinct from any permissible contractual damages: *Grace Petroleum Corp. v. Williamson*, 906 S.W.2d 66, 68–69 (Tex.App.—Tyler 1995, no writ); *Parker v. Parker*, 897 S.W.2d 918, 924 (Tex. App.—Fort Worth 1995, writ denied); *Barbouti v. Munden*, 866 S.W.2d 288, 293–94 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 170 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 719–20 (Tex.App.—Dallas 1989, writ denied); *Hebisen v. Nassau Dev. Co.*, 754 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Allen v. Allen*, 751 S.W.2d 567, 574–75 (Tex.App.—Houston [14th Dist.] 1988, writ denied). We instead conclude that, if a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort.

We thus conclude that Presidio has a viable fraud claim that it can assert against Formosa. However, this conclusion does not end our inquiry. We must also determine whether legally sufficient evidence supports the jury's fraud and damage findings.

### III

◼ A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d

670, 688 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *see also Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Schindler v. Austwell Farmers Coop.,* 841 S.W.2d 853, 854 (Tex. 1992). However, the mere failure to perform a contract is not evidence of fraud. *See id.* Rather, Presidio had to present evidence that Formosa made representations with the intent to deceive and with no intention of performing as represented. *See Spoljaric,* 708 S.W.2d at 434; *Stanfield,* 462 S.W.2d at 272; *see also T.O. Stanley Boot Co.,* 847 S.W.2d at 222; *Crim Truck & Tractor,* 823 S.W.2d at 597. Moreover, the evidence presented must be relevant to Formosa's intent at the time the representation was made. *Spoljaric,* 708 S.W.2d at 434.

Presidio alleges that Formosa made three representations· that it never intended to keep in order to induce Presidio to enter into the contract. First, the bid package and contract represented that Presidio would "arrange the delivery schedule of [Formosa]-supplied material and be responsible for the delivery ... of all materials (this includes material supplied by [Formosa])." Second, the bid package and the contract provided the job was scheduled to begin on July 16, 1990, and be completed on October 15, 1990, 90 days later. Third, paragraph 17 of the contract represented that Formosa would be responsible for the payment of any delay damages within its control.

The jury agreed with Presidio and found that Formosa committed fraud. In our review of this finding, all of the record evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970). Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *Browning–Fer-*

*ris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex. 1993).

■ We conclude that Presidio presented legally sufficient evidence that Formosa made representations with no intention of performing as represented in order to induce Presidio to enter into this contract at a low bid price. In the bid package and the contract, Formosa represented that Presidio would have control of the delivery of the concrete necessary for the project. While Formosa argues that other more general provisions contained in the contract refute this representation, the contract and the bid package specifically and unequivocally provide that Presidio would "arrange the delivery schedule of [Formosa]-supplied material and be responsible for the delivery ... of all materials." Further, even Formosa's own witnesses admitted that, under the plain language of the contract, Presidio had control over the scheduling and delivery of concrete. Accordingly, there is clearly sufficient evidence that this representation was in fact made by Formosa.

In contravention of this representation, Formosa decided, two weeks before the contract was signed, to take over the delivery of the concrete without informing Presidio. Jack Lin, Formosa's civil department director, testified that Formosa, in an effort to save money, decided to take over the concrete delivery and set up its own delivery schedule. However, Presidio was not informed of this change until after the contract was signed. Lin admitted that Formosa acted deceptively by taking over the concrete delivery and scheduling when the bid package expressly provided that the contractor would have control. He further admitted that Formosa knew that Presidio would rely on this· representation in preparing its bid.

Presidio's president, Bob Burnette, testified that Presidio did in fact rely on this representation in preparing its bid. Burnette further testified that every concrete pour was delayed one-to-two days while Presidio waited for Formosa to obtain the requested concrete. Because Burnette did not calculate such delays into his bid, the actual cost of the project exceeded the contract price.

This testimony provides more than a scintilla of evidence supporting Presidio's contention that Formosa intentionally made representations that it never intended to keep in order to induce Presidio to enter into the contract at a low bid price and that Presidio relied on these misrepresentations to its detriment. Thus, legally sufficient evidence supports the jury's fraud finding. We need not consider whether any other representations Formosa allegedly made were fraudulent.

Formosa contends, however, that the award of $700,000 in fraud damages to Presidio is excessive as a matter of law. Presidio counters that the damage award is supported by Burnette's testimony that, if he had been told the truth about the project, he "would have bid in the neighborhood of $1,300,000" to perform the contract, and that that amount was a reasonable and necessary cost for doing the work. Presidio maintains that, by subtracting the amount they were paid on the contract, $600,000, from the $1,300,000 reasonable and necessary cost for doing the work, there is legally sufficient evidence to support the damage award of $700,000. But Formosa objected at trial to this testimony on the basis that it was both speculative and an improper measure of damages. Formosa argued again in its motion for new trial that the damages awarded were excessive because Burnette's testimony was speculative and based on an improper measure of damages. Formosa re-urges these complaints to this Court.

■■■ Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex.1997); *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984).[1] The out-of-pocket measure computes the difference between the value paid and the value received,

while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received. *Arthur Andersen*, 945 S.W.2d at 817; *Leyendecker*, 683 S.W.2d at 373.

■■■ The out-of-pocket measure allows the injured party "to recover the *actual injury* suffered measured by 'the difference between the value of that which he has *parted with*, and the value of that which he has received.'" *Leyendecker*, 683 S.W.2d at 373 (quoting *George v. Hesse*, 100 Tex. 44, 93 S.W. 107 (1906) (emphasis added)); *see also Morriss–Buick Co. v. Pondrom*, 131 Tex. 98, 113 S.W.2d 889, 890 (1938) (because out-of-pocket fraud damages are intended to provide actual compensation for the injury rather than profit, the proper measure of damages is the difference between the value of what was parted with and what was received). Burnette's testimony regarding what he would have bid if he had known the truth is not the proper measure of out-of-pocket damages. Burnette computed his $1.3 million bid by taking the total amount Presidio spent on the labor, materials, supplies, and equipment used on the job, $831,000, divided by the original expected cost of the job, $370,000, multiplied by his actual bid of $600,000. He also performed an alternative calculation that reached a similar result by dividing the 264 days the job actually took by the 134 days the job should have taken multiplied by his actual bid of $600,000. Basically, both of these methods multiplied the actual bid price of $600,000, which included a profit margin on the job, by a ratio comparing what actually occurred to what was anticipated. Thus, both of these calculations incorporated expected lost profits on a bargain that was never made. But the out-of-pocket measure only compensates for actual injuries a party sustains through parting with something, not loss of profits on a bid not made, and a profit never realized,

1. When properly pleaded and proved, consequential damages that are foreseeable and directly traceable to the fraud and result from it might be recoverable. *Arthur Andersen*, 945 S.W.2d at 817. It is possible that, in the proper case, consequential damages could include foreseeable profits from other business opportunities lost as a result of the fraudulent misrepresentation. Presidio makes no argument in this case that the $700,000 damage award is supported by legally sufficient evidence of any consequential damages it suffered as a result of Formosa's fraud.

in a hypothetical bargain never struck.[2] Thus, the $1.3 million hypothetical bid less the $600,000 actually received is not probative of Presidio's out-of-pocket loss. The proper out-of-pocket calculation of damages, based on Burnette's testimony, was $831,000 less the amount he actually received, $600,000, for damages of $231,000.

 Burnette's testimony regarding the $1.3 million hypothetical bid is also not probative evidence of benefit-of-the-bargain damages. Under the benefit-of-the bargain measure, lost profits on the bargain may be recovered if such damages are proved with reasonable certainty. *See* RESTATEMENT (SECOND) OF TORTS § 549(2) (1977) ("The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty."). But, while a benefit-of-the-bargain measure can include lost profits, it only compensates for the profits that would have been made if the bargain had been performed as promised. Accordingly, the proper calculation of benefit-of-the-bargain damages is Presidio's anticipated profit on the $600,000 bid plus the actual cost of the job less the amount actually paid by Formosa.

Based on Burnette's testimony, Presidio's benefit-of-the-bargain damages are not $700,000, but rather $461,000 (bid price of $600,000 less original expected cost of $370,000 for profit of $230,000, plus $831,000 actual cost less $600,000 actually paid).

 Burnette calculated his hypothetical $1.3 million bid by multiplying his $600,000 bid, including his anticipated profit, by a factor of about 2.2. However, this doubling of Presidio's bid is entirely speculative because there is no evidence that Presidio would have been awarded the project if it had made a $1.3 million bid. In fact, if any inference could be drawn, it would lead to the opposite conclusion because two of the three other bids Formosa received were lower than $1.3 million. Burnette's testimony as to what he would have bid had he known the truth simply does not establish the benefit of any bargain made with Formosa. It is not based on the expenses incurred and profits lost on this contract because of Formosa's representations, but rather is based on an entirely hypothetical, speculative bargain that was never struck and would not have been consummated. This testimony is therefore not legally sufficient evidence supporting an award of $700,000 in damages.[3]

---

**2.** The supplemental dissenting opinion issued today urges that out-of-pocket damages include the expected loss profits on a bargain never made without explaining how Presidio "parted with" such non-existent, hypothetical profits. 960 S.W.2d at 55.

**3.** Remarkably, the supplemental dissenting opinion repeats the charge that the Court has engaged in an improper factual sufficiency review, despite the fact that Presidio never made such a complaint in its motion for rehearing. In fact, in its motion for rehearing, rather than contending that we had conducted a factual sufficiency review, Presidio actually admitted that the Court properly calculated benefit-of-the-bargain damages. Contrary to the dissent's rhetoric, we are simply not conducting a factual sufficiency review, but instead are concluding that there is no legally sufficient evidence supporting the entire damage award because, based on Burnette's own testimony, the damage award is speculative and based on an improper legal measure of damages. This Court has repeatedly recognized that determining whether lost profits have been proved with reasonable certainty is a fact-intensive determination dependent upon the circumstances of a particular case. *Texas Instruments, Inc. v. Teletron Energy Management, Inc.,* 877 S.W.2d

276, 279 (Tex.1994); *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992); *Whiteside v. Trentman,* 141 Tex. 46, 170 S.W.2d 195, 197 (1943). When a review of the surrounding circumstances establishes that the profits are not reasonably certain, there is no evidence to support the lost profits award. *See Texas Instruments,* 877 S.W.2d at 279–81 (reviewing the circumstances to determine that lost profits had not been established with reasonable certainty). In this case, we are merely considering all of Burnette's testimony, while indulging all reasonable inferences in Presidio's favor, to conclude that it does not constitute legally sufficient evidence of $700,000 in actual damages because it is speculative and based on an improper measure of damages.

Moreover, we are not retreating from our refusal to endorse one method for determining lost profits. *See, e.g., Holt Atherton,* 835 S.W.2d at 85. Instead, we merely conclude that this particular method, testifying what the bid "would have been," is an improper method and constitutes no legally sufficient evidence of the damages awarded. This conclusion is logically consistent with our holding in *Holt Atherton* that the plaintiffs' testimony as to what two bulldozers working half

We accordingly hold that there is no probative evidence supporting the entire amount of damages awarded by the judgment. There is, however, clearly legally sufficient evidence that Presidio suffered some damages as a result of Formosa's fraud; in fact, Burnette's testimony, while it does not support a damage award of $700,000, does support an out-of-pocket damage award of $231,000 or a benefit-of-the-bargain damage award of $461,000. But, because the issue of damages was contested by Formosa, we cannot render judgment in favor of Presidio for a lesser dollar amount. Instead, because there is no legally sufficient evidence to support the entire amount of damages, but there is some evidence of the correct measure of damages, we reverse the judgment of the court of appeals and remand the cause for a new trial. *See Texarkana Mem'l Hosp. v. Murdock,* 946 S.W.2d 836, 841 (Tex.1997).

█ In conjunction with its motion for rehearing, Presidio has also filed a motion for voluntary remittitur, offering to remit $239,000 plus interest to comport with our determination that its evidence could support a benefit-of-the-bargain damage award of $461,000. We conclude that we cannot grant Presidio this relief.

Texas Rule of Appellate Procedure 46 delineates two means by which remittitur may be effectuated on appeal. First, the court of appeals may suggest a remittitur in lieu of ordering a new trial. TEX.R.APP.P. 46.3. Second, a party may voluntarily remit if a court of appeals reverses the trial court's judgment because of a legal error that affects only part of the damages awarded by the judgment. TEX.R.APP.P. 46.5. The Texas Rules of Appellate Procedure do not expressly authorize a party to remit to this Court, although the Court has accepted remittitur in the past, prior to the adoption of the rules. *See Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996) (listing cases).

We were faced with an almost identical offer of voluntary remittitur in *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664 (Tex. 1996). In that case, Mr. Ivy presented testi-mony regarding the damages he suffered as a result of a fire that destroyed his mobile home and his personal items in the home. *Id.* at 668. His testimony included inadmissible statements regarding the cost of his mobile home that were offered to establish its market value at the time of loss. *Id.* Recognizing that his statements were not probative of the market value of the home, the Ivys attempted to remit the difference between the jury's verdict and the legally sufficient evidence he presented regarding the damages to the personal items in his home. *Id.* at 669. However, this Court rejected the Ivys' offer of remittitur. We concluded that, because we are limited to considering questions of law, we could only consider a remittitur under such circumstances if the damages to the personal property had been established as a matter of law. *Id.*

Similarly, in this case, Burnette presented the only testimony on Presidio's behalf regarding the damages suffered as a result of Formosa's fraud. We have concluded that parts of his testimony were not probative of the damages awarded by the jury. Presidio has attempted to remit the difference between the jury's verdict and the legally sufficient evidence it presented regarding damages. However, under our precedent in *Redman Homes,* we cannot even consider such an offer unless Presidio established as a matter of law that it suffered $461,000 in damages. But Presidio does not make any claim that it proved $461,000 in damages as a matter of law, nor could it do so under the record in this case. Formosa clearly contested the amount of damages at both the trial and appellate level. Accordingly, because Presidio's motion for voluntary remittitur does not present us with a question of law, it must be overruled.

## IV

We finally consider Formosa's argument that the submission of the good faith and fair dealing question was erroneous. The trial court submitted a jury charge question on whether Formosa failed "to comply with its

of the time earned was legally insufficient evidence of what one bulldozer working full time

could earn. *See id.*

duty of good faith and fair dealing to Presidio, if any." The jury found that Formosa had failed to comply with this duty and awarded Presidio damages of $1.5 million.

■ Formosa contends that the submission of this question was erroneous. We agree. There is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions. *See English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983); *Electro Assocs., Inc. v. Harrop Constr. Co.,* 908 S.W.2d 21, 22–23 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 481 (Tex. App.—Corpus Christi 1989, writ denied). We find no basis for the submission of a good faith and fair dealing question to the jury in this case. Accordingly, the jury's affirmative answer to this question cannot support the judgment. On remand, this question should not be submitted.

\* \* \* \* \* \*

In conclusion, we hold that, when a party fraudulently procures a contract by making a promise without any intent of keeping the promise in order to induce another into executing the contract, a tort cause of action for that fraud exists. Accordingly, Presidio has a viable fraud claim against Formosa even though it only seeks damages for economic losses related to the subject matter and performance of the contract between the parties. We cannot affirm the court of appeals' judgment, however, because there is no evidence to support the entire damage award. We therefore reverse the judgment of the court of appeals and remand this case for a new trial.

BAKER, J., filed a dissenting opinion in which SPECTOR, J., joins.

BAKER, Justice, joined by SPECTOR, Justice, dissenting.

Because the Court conducts an improper factual sufficiency review of the evidence supporting Presidio's actual damages for Formosa's fraud, I dissent.

## I. LOST PROFITS

### A. No Evidence Review

As the Court holds, the victim of common law fraud in the inducement can recover benefit-of-the bargain damages. This measure of damages allows recovery for lost profits. In reviewing damage awards for lost profits, this Court must conduct only a traditional no evidence review. *See Texas Instruments, Inc. v. Teletron Energy Management,* 877 S.W.2d 276, 281 (Tex.1994) (holding that there was no evidence to prove reasonable certainty of lost profits); *Holt Atherton Indus. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992) (holding that the evidence was legally insufficient to prove lost profits); *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938) (court determined that it could not decide, as a matter of law, that facts required judgment against plaintiff's lost profits claim).

We cannot weigh the factual sufficiency of the evidence supporting the jury's verdict. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). It is only when reasonable minds *cannot* differ that evidence lacks probative force that it is "no evidence." *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Like all cases where this Court considers the legal sufficiency of the evidence, we must consider only the evidence and inferences that tend to support the lost profits finding, and disregard all evidence and inferences to the contrary. *Holt Atherton,* 835 S.W.2d at 84.

### B. The Nature of Lost Profits Evidence

Recovery of lost profits is allowed where a business relationship is established on the strength of a contract but is adversely effected by a contracting party's misconduct under the contract. *See Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 348 (1955). We have held that "recovery for lost profits does not require that the loss be susceptible of exact calculation." *Holt Atherton,* 835 S.W.2d at 84. In fact, "[i]n their nature, profits are more or less conjectural or speculative." *Pace Corp.,* 284 S.W.2d at 348. Nevertheless, a party must prove lost profits by some competent evidence with "reason-

able certainty." *Holt Atherton,* 835 S.W.2d at 84; *Southwest Battery,* 115 S.W.2d at 1098. To withstand no evidence review, "[a]t a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data … [and] [r]ecovery of lost profits must be predicated on one complete calculation." *See Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994).

Before today, this Court had held that "[i]t is impossible to announce with exact certainty any rule measuring" a party's lost profits. *Southwest Battery,* 115 S.W.2d at 1099. In fact, until today, this Court hastened to "sanction any one method for determining lost profits." *Holt Atherton,* 835 S.W.2d at 85. Nevertheless, today the Court conducts an improper factual sufficiency review of Presidio's lost profits evidence by weighing Presidio's testimony against what the Court calls *"the* proper calculation" of lost profits. 960 S.W.2d at 50 (emphasis added). I would affirm the jury's verdict because Presidio presented some evidence, by providing an objective and complete calculation, to support its loss with reasonable certainty. *Holt Atherton,* 835 S.W.2d at 84–85.

## II. PRESIDIO'S LOST PROFITS EVIDENCE

### A. PRESIDIO'S WITNESS

Bob Burnette has been Presidio's president since its formation in 1984. Burnette has a bachelors degree and a masters degree in civil engineering. He is a licensed professional engineer in California and in Texas. Burnette has negotiated contracts for Presidio since 1984. The contracts have ranged from a quarter million dollars to two million dollars. Before bidding jobs for Presidio he participated in other large contract bids including one for a pipeline in Iran for over $100 million.

Burnette prepared Presidio's bid package, in reliance on Formosa's representations about the job, and negotiated the contract with Formosa's representatives. During the

project, Burnette dealt with Formosa about the contract's terms and handled contract disputes for Presidio. At trial, Burnette testified as an expert.

### B. PRESIDIO'S EVIDENCE

Based on his expertise and personal knowledge, Burnette testified about how he calculated Presidio's lost profits caused by Formosa's fraud. Specifically, Burnette testified that had Formosa truthfully represented the project's details, Presidio would have bid about $1.3 million. Burnette calculated the $1.3 million bid by comparing his original estimated cost to Presidio's actual cost to obtain a ratio, and then multiplying by the original bid. After deducting what Formosa paid Presidio, this results in a figure of $700,-000, which includes lost profits. The percentage of lost profits in the $1.3 million bid is identical to the percentage of estimated profit in the original bid that Formosa fraudulently induced. In other words, Burnette's calculation multiplied Presidio's actual bid, which included a specific profit margin, by a ratio comparing what it took to complete the job because of Formosa's fraudulent scheme to what Presidio relied upon under the contract.

### C. APPLICATION OF LAW TO THE EVIDENCE

Of course, Burnette's opinions are "hypothetical" and somewhat "speculative"—he didn't expect Formosa to commit fraud when he bid the job and won the contract for Presidio.[1] Moreover, as we have recognized, by their nature, lost profits are "more or less conjectural or speculative." *Pace Corp.,* 284 S.W.2d at 348. Indeed, just over three years ago, this Court reaffirmed the rule that the "reasonable certainty" requirement for proof of lost profits "is intended to be flexible enough to accommodate the myriad circumstances in which claims of lost profits arise." *Texas Instruments,* 877 S.W.2d at 279.

Here, Burnette's "hypothetical" calculation or "speculation", as the Court calls it, was not "remote" or based on the "mere hope of

---

[1] The Court observes that if Presidio would have bid based on Burnette's calculation, Presidio *might not* have won the contract in the first place. 960 S.W.2d 49. Maybe not. On the other hand, Presidio *might not* have wanted to bid on the contract to begin with if it had known about Formosa's fraudulent scheme.

success" or some "untried enterprise." *Texas Instruments*, 877 S.W.2d at 279–80. Instead, Burnette based his calculation on Presidio's contract with Formosa, the contract's built in profit margin, and Presidio's actual cost to complete the contract given Formosa's fraudulent conduct. Burnette's calculation was objective and complete. *See Szczepanik*, 883 S.W.2d at 649. Presidio presented at least the "minimum" evidence to establish lost profits with reasonable certainty. *See Szczepanik*, 883 S.W.2d at 649. Accordingly, there is legally sufficient evidence to support the judgment for Presidio. The Court can only find otherwise by conducting a Constitutionally prohibited factual sufficiency review of Presidio's evidence.

## III. CONCLUSION

To hold as the Court does today, allows Formosa, a proven fraud feasor, to escape liability[2] simply because Presidio cannot "prove a perfect measure of damages." *See Southwest Battery*, 115 S.W.2d at 1099. Besides improperly weighing in on the facts and crunching the numbers to determine the "proper calculation" of damages, the Court also ignores its rule against sanctioning any one method for determining lost profits. *See Holt Atherton*, 835 S.W.2d at 85. An injured party, like Presidio, "must not be deprived of [its] remedy because of the difficulties lying in the way of proving [loss profits]." *Pace Corp.*, 284 S.W.2d at 348.

Because Presidio provided some evidence, based on an objective and complete calculation with reasonable certainty, I would affirm the court of appeals' judgment for Presidio.

BAKER, Justice, joined by SPECTOR, Justice, dissenting to Order Overruling Motions for Rehearing and Voluntary Remittitur.

Today the Court overrules Presidio's motions for rehearing and voluntary remittitur. I respectfully dissent to the Court's order. Studying the Court's opinion again after it issued, I write to say some things I wish I had said in my original dissent. I also write

2. Formosa not only escapes liability for actual damages, but also avoids a $10 million punitive

to discuss the merits of Presidio's motions, which the Court overrules without comment.

I believe that the Court's entire discussion of the damages and the conclusions the Court reaches are fundamentally flawed. First, the Court calculates Presidio's damages based on the contract Presidio and Formosa actually made, rather than the contract they would have made but for Formosa's fraudulent inducement. Second, although the Court recognizes that the correct criteria for measuring damages in a fraudulent inducement case is "value," the Court calculates the damages it concludes are available to Presidio based only on "costs."

### FRAUD IN THE INDUCEMENT VERSUS BREACH OF CONTRACT

In this case the Court holds that a party may recover tort damages for fraudulent inducement irrespective of whether the fraudulent representations are later subsumed in a contract or whether the party only suffers an economic loss related to the contract's subject matter. To allow recovery of tort fraud damages only when a plaintiff suffers an injury distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well established law. To so limit the recovery ignores the fact that an independent legal duty, separate from the contract's existence, precludes the use of fraud to induce a binding agreement. 960 S.W.2d at 47.

The Court acknowledges that Texas recognizes two measures of direct damages for common-law fraud: (1) the out-of-pocket measure and the (2) benefit-of-the-bargain measure. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex.1997); *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988). The Court recognizes that the out-of-pocket measure is the difference between the *value* paid and the *value* received while the benefit of the bargain measure is the difference between the *value* as represented and the *value* received. *See Arthur Andersen*, 945

damage verdict punishing Formosa for its fraud.

S.W.2d at 817; *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984). The Court states that the out-of-pocket measure allows the injured party to recover the actual injury suffered measured by the difference between the value of that with which he has parted with, and the value of that which he received. *See Arthur Andersen,* 945 S.W.2d at 817. The Court also concludes that while the benefit-of-the-bargain measure can include lost profits, it only compensates for the profits that would have been made if the bargain had been performed as promised.

Despite recognizing that fraudulent· inducement to enter a contract is a breach of an independent legal duty separate from the contract itself, the Court calculates both measures of damages based on Presidio's damages as if the contract made had been performed as promised.

## Costs v. Value

Presidio's argument in its motion for rehearing is that the Court improperly computed damages based upon costs rather than value. *See Leyendecker,* 683 S.W.2d at 373. Presidio contends that the way the Court calculated damages, Formosa does not have to pay the full "value" of what Presidio furnished Formosa. Instead, Presidio asserts Formosa will receive what Presidio furnished at "cost." Presidio contends that Presidio will not be paid the full value of what it. gave, and thus will not be made whole.

Formosa responds that Presidio's theory is wrong because it measures the damages after the contract is complete by striking a completely new bargain. Formosa argues that the proper measure of damages is computed as of the time of the sale, or as in this case at the point of contract. *See Leyendecker,* 683 S.W.2d at 372. Formosa contends that the policy underlying fraud law is to redress *actual* losses. *See Morriss–Buick Co. v. Pondrom,* 131 Tex. 98, 113 S.W.2d 889, 890 (1938).

It is true that damages in a fraudulent inducement case are computed as of the time of the fraud. In this case, at the point of contract. However, Formosa essentially adopts the Court's rationale; therefore, Formosa's arguments suffer from the same fun-

damental flaws as those of the Court. That is, the damage calculation should be based upon the contract actually made, rather than the contract the parties would have made but for Formosa's fraudulent inducements.

Here, Presidio was entitled to show and did show the value of its loss based upon what actually happened because of Formosa's fraudulent inducements when the parties made the contract. Taking the known facts when Presidio completed the project, and applying Presidio's regular calculations of costs plus profit margin as of the time the parties negotiated the fraudulently induced contract, produces a damages result based upon objective facts, figures or data, and predicated on one complete calculation. *See Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994).

The Court's new writing reinforces my view, as expressed in my original dissent, that the Court has engaged in an improper factual sufficiency review. Despite its protestations, the Court weighs the evidence, which it cannot do. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). The Court asserts that Presidio's damage evidence was entirely speculative because there is no evidence that Presidio would have been awarded the project if it had made a 1.3 million dollar bid. The Court then states that the evidence indicates that Presidio would not have been awarded the project because two of the three other bids Formosa received were lower than 1.3 million. The Court concludes that Presidio's evidence is not based on expenses incurred and profits lost on this contract because of Formosa's representations, but rather is based upon an entirely hypothetical, speculative bargain that was never struck and would never have been consummated. If this is not weighing the evidence, I do not know what is.

## Voluntary Remittitur

Alternatively, Presidio asserts that it is entitled to a remittitur of the damages the Court found excessive. Because the Court did not affirm the court of appeal's judgment, Presidio offers a voluntary remittitur of the amount of the actual fraud damages the

Court found to be excessive. Presidio requests the court of appeals judgment be reformed and affirmed as reformed. Alternatively, Presidio requests the judgment be reformed and remanded to the court of appeals. Presidio argues that the Court, for many years, has accepted voluntary remittiturs from plaintiffs. *See Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996).

Formosa responds that the Court should not grant Presidio a voluntary remittitur because that relief from error in awarding damages unsupported by legally sufficient evidence is unavailable through the office of voluntary remittitur. Formosa relies on *Redman Homes* in support of its argument.

In *Redman Homes,* a unanimous Court recognized that the Court has accepted remittiturs from plaintiffs in the past. *See Redman Homes,* 920 S.W.2d at 669. In *Redman Homes,* the Court also said that our decisions involving voluntary remittiturs are limited by the rule that this Court can consider only questions of law. The Court observed that the plaintiff's offer in *Redman Homes* presumed that the Court could conclusively ascertain from the record the amount of damages untainted by what the Ivys conceded was inadmissible testimony about market value. In *Redman Homes* the Court concluded it was unable to ascertain the damages untainted by inadmissible testimony. *Redman Homes,* 920 S.W.2d at 669. I submit that such is not the case here. First, in its response to Presidio's request for voluntary remittitur, Formosa neglects to state, but Presidio points out that in Formosa's application for writ of error to this Court, Formosa asserted: "Presidio's actual damages are excessive as a matter of law to the extent they exceed $467,000. The minimum relief to which Formosa is entitled for that error is excision of the excess and rendition of judgment for only $467,000. *Larson v. Cactus Util. Co.,* 730 S.W.2d 640 (Tex. 1987)." In my view, asserting to this Court that the actual damages are excessive as a matter of law to the extent that they exceed $467,000 is an express concession that Presidio's actual damages are proven as a matter of law in the amount of $467,000.

Be that as it may, the facts here are distinguishable from those in *Redman Homes.* Here, the Court could and did conclusively ascertain from the record the damages untainted by inadmissible testimony. The substance of the Court's damages finding in this case is that Presidio's evidence about profits it might have earned is inadmissible testimony because it is hypothetical and speculative. The Court held that Presidio's damages testimony does support an out-of-pocket damage award of $231,000 or a benefit-of-the-bargain damage award of $461,000. What the Court concludes amounts to a conclusive finding of damages under either measure that the court holds is permissible for a fraud in the inducement claim. However, the Court declines to render judgment for Presidio for a lesser dollar amount because Formosa contests the damages issue.

Based upon the Court's finding of specific damages under either measure of damages that applies in a fraudulent inducement case, my question is what is there left to be tried? It seems to me that the Court has conclusively ascertained the damages untainted by what it holds is the inadmissible testimony and that Presidio's offer of a voluntary remittance is entirely in order. *See Redman Homes,* 920 S.W.2d at 669; *see also Larson,* 730 S.W.2d at 641; *Texas Employers' Ins. Ass'n v. White,* 129 Tex. 659, 107 S.W.2d 360, 361 (1937); *Baldwin v. Haskell Nat'l Bank,* 104 Tex. 122, 134 S.W. 1178 (1911).

### CONCLUSION

Based on my original dissent, I still believe that the Court erred in how it disposes of the damages issue. The Court should have affirmed the court of appeals' judgment for Presidio. However, based upon the Court's holding and Presidio's motion for voluntary remittitur, Presidio is at least entitled to have the Court grant that remittitur. The Court should modify the court of appeals' judgment to that extent and otherwise affirm the court of appeals' judgment.