ACCEPTED
14-14-00905-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
9/10/2015 3:50:09 PM
CHRISTOPHER PRINE
CLERK

In The
Court of Appeals
For The
Fourteenth District of Texas

———————

NO. 14-14-00905-CV

———————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

9/10/2015 3:50:09 PM

CHRISTOPHER A. PRINE
Clerk

Colorado County Oil Company, Inc., Day & Night, Inc., and SNP Business, Inc.
*Appellants*

v.

Star Tex Distributors, Inc., *Appellee*

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2012-43621

**APPELLANT COLORADO COUNTY OIL COMPANY, INC'S REPLY BRIEF**

Donald H. Grissom
don@gandtlaw.com
State Bar No. 08511550
509 West 12th Street
Austin, Texas 78701
(512) 478-4059
(512) 482-8410 fax

ATTORNEY FOR APPELLANT COLORADO COUNTY OIL COMPANY, INC.

ORAL ARGUMENT REQUESTED

i

# TABLE OF CONTENTS

Table of Contents..................................................................................ii

Table of Authorities ........................................................................ iii

A. No Evidence of Willful and Intentional Act of Interference ................2

B. Colorado County Legally Competed for the Contract .........................6

C. No Evidence that Colorado County Caused Damage to Star Tex.........7

D. No Evidence to Support Award of Contractual Damages ....................8

Conclusion .......................................................................................9

Prayer ...........................................................................................10

Certificate of Service ......................................................................11

Certificate of Compliance ................................................................11

# TABLE OF AUTHORITIES

**Cases**

*ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997) ..................... 2

*Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41 (Tex.1998) ................................................................. 9

*Holt Atherton Indus., Inc. v. Heine* 835 S.W.2d 80, 85 (Tex.1992) ........................ 9

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992) ........................................................................................... 1,7

In The
Court of Appeals
For The
Fourteenth District of Texas

NO. 14-14-00905-CV

Colorado County Oil Company, Inc., Day & Night, Inc., and SNP Business, Inc.
*Appellants*

v.

Star Tex Distributors, Inc., *Appellee*

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2012-43621

**APPELLANT COLORADO COUNTY OIL COMPANY, INC'S REPLY
BRIEF**

TO THE HONORABLE COURT:

Star Tex asserts in its brief that Colorado County has failed to preserve error

on appeal because it did not file a Motion for New Trial. However, on a challenge

to the legal sufficiency or a no-evidence challenge, the procedure for preserving

the error is by filing a motion for judgment notwithstanding the verdict or a motion

to disregard jury answers. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847

1

S.W.2d 218, 220 (Tex.1992). On October 9, 2014, Colorado County filed its Motion for JNOV and Motion to Disregard Jury Findings (CR,p.51). This motion was denied by the Court on October 20, 2014 (CR,p.79).

To prevail on its cause of action for tortious interference with an existing contract, Star Tex had the burden to prove, by a preponderance of the evidence, each of the following elements: (1) that a contract subject to interference exists, (2) the commission by the defendant of a willful and intentional act of interference with the contract, (3) that the willful and intentional act proximately caused injury, and (4) actual damages or loss occurred. *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex.1997).

### A. *No Evidence of Willful and Intentional Act of Interference*

The element of intent is most commonly proven through circumstantial evidence taking into account what knowledge the party possessed at the time of its action, what its duty was, and whether it is legally allowed to take such action(s).

Star Tex relies on Chip Leach's (Colorado County) testimony that normally, if he saw a branded location, he would assume it was under contract and would seek confirmation that no contract existed before pursuing the business of that facility. Here, Leach followed his normal procedure and *did* seek that confirmation by asking a direct question to SNP as to whether it had a supply contract with Star Tex (RRV3,p.190-191; RRV4,p.75,83). The answer was, "no" (RRV3,p.190-191;

RRV4,p.75,83). Leach had no duty to inquire further, nor reason to disbelieve SNP, especially since he had an existing business relationship with SNP's owner's (Shokat Ali) relatives (RRV3,p.190; RRV4,p.17-18). While Colorado County had no legal duty to verify SNP's statement that there was no contract, Colorado County went a step further and contacted Shokat Ali's relative, who was responsible for directing SNP to Colorado County, to inquire whether a supply contract existed (RRV4,p.22-23). Again, the answer was, "no" (RRV4,p.23). Star Tex's testimony about their own practice of getting a "release" from another supplier is not evidence of, nor does it create, any legal duty.

On both direct examination and cross-examination, the consistent and repeated testimony of the parties in this case was that Colorado County was told by the representatives of SNP that there was no supply contract for the facility (RRV3,p.190-191; RRV4,p.22-23, 75, 83). Although Star Tex claims to have called Colorado County, but did not talk to anyone, two days prior to Colorado County making its first delivery to the facility (RRV3, p. 178), it was not until later that Colorado County was sent a copy of the alleged contract (RRV3,p.14). Still, when Colorado County received a copy of the contract, the parties to that contract were not the same as the parties with whom Colorado County contracted, thus creating further confusion (RRV3,p.216). The timeline below outlines what knowledge Colorado County possessed as the events of this case were unfolding:



| | |
|---|---|
| December 2010 | • Shokat Ali Contacts Colorado County  (RRV3, p.206; RRV4,p.80-81, 88) |
| January 2011 | • Leach visits facility (RRV3,p.206) Shokat Ali states he has no contract (RRV3,p.190-191,207; RRV4,p.75, 83, 209) |
| January 25, 2011 | • SNP enters into contract with Colorado County (CCOC brief Appendix 2) |
| March 2011 | • Colorado County coordinates branding incentive package with Valero |
| April/May 2011 | • Star Tex notified of Shokat Ali's intent to cancel contract (RRV4,p.248-250) |
| May 2011 | • Colorado County pays $50,000 Valero incentive (RRV3,p.222) |
| May 6, 2011 | • Star Tex calls Colorado County (no answer/no reply)(RRV3,p.9, 178) |
| May 8, 2011 | • Colorado County begins fuel deliveries to SNP(RRV4,p.23) |
| May 12, 2011 | • Star Tex emails Colorado County copy of contract (RRV3,p.14) |

Star Tex's belief that Colorado County should have ceased any relationship with the facility because, it could have/didn't have much money in it, does not create a legal duty nor does it constitute evidence of any material fact. It is also without merit because Colorado County legally and fairly obtained SNP's

business. No evidence was presented by any party to dispute Leach's testimony regarding his lack of knowledge of Star Tex's claimed contractual relationship with the facility. Therefore, if Colorado County acted under the premise that there was no supply contract for the convenience store (RRV3,p.190-191, 207; RRV4,p.75-78,83, 209), and no evidence was presented to contradict this, then it is an impossibility that Colorado County could have intended to cause Day & Night to breach its contract with Star Tex.

Star Tex asserts or insinuates that Colorado County's agreement to pay, up front, the $50,000 from Valero's incentive package was the inducement for SNP to breach its contract with Star Tex. Again, this argument is without merit and contradicted by Star Tex's own testimony. First, Star Tex (Feroz Momin) testified that this was a common industry practice (RRV2,p.87-91). Second, he testified that he offered the same amount to SNP (RRV3,p.154-155). This was obviously refused because Shokat Ali had already decided to stop doing business with Star Tex (RRV4,p.248-250). Moreover, no evidence was introduced to contradict the testimony of both Shokat Ali and Chip Leach that Shokat asked Leach if Valero would pay incentives (RRV3,p.226; RRV4,p.21,85-86). That request was forwarded to Valero (CCOC Brief Appendix 3) who acknowledge that it would pay branding incentives. That response was forwarded back to Shokat Ali. All of this being common in the industry (RRV2,p.87-91; RRV4,p.21,31). This is further

illustrated by the fact that Shokat Ali knew to ask about the Valero branding incentives.

### B. *Colorado County Legally Competed for the Contract*

There was no evidence that Colorado County acted with the requisite intent to interfere with the dealer franchise agreement between Star Tex and Day & Night. All evidence shows Colorado County intended to act in a manner allowed by law and in a manner that is completely justified. The uncontroverted evidence was that SNP contacted, without any solicitation, Colorado County about supplying SNP with gasoline (RRV4,p.80-81). This occurred in late 2010 (RRV4,p.80-81). SNP specifically confirmed to Colorado County that it had no other contract for the supply of gasoline (RRV3,p.190-191; RRV4,p.75,83). A contract was then executed on January 25, 2011 between Colorado County and SNP (CCOC Brief Appendix 2). As a matter of law, Colorado County had a legal right to and was justified in entering into this contract.

Star Tex's argument that Colorado County should have relented and terminated its contract with SNP when approached by Star Tex four months later is contrary to law, and absurd. There is no legal basis for upholding a verdict for tortious interference where Colorado County was simply engaging in lawful business activity and honoring the terms if its own contract. When evidence is so

weak it constitutes no evidence, such evidence will not support a verdict. *T.O. Stanley Boot Co., Inc.* at 222.

### C. No Evidence that Colorado County Caused Damage to Star Tex

The jury was given the following definition in the charge:

> "Proximate cause" means a cause that was a substantial factor in bringing about an event and without which cause such event would not have occurred. In order to be proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The act of Colorado County entering into a contract with SNP to supply fuel to the Bammell Road store was not the act that proximately caused Star Tex's injury. Shokat Ali had already made the decision to discontinue business with Star Tex (RRV4,p.91-92) prior to his contacting Colorado County. The intent was to cease purchasing fuel from Star Tex (RRV4,p.91-92) no matter who was chosen to be the new fuel supplier. All the evidence and testimony points to the fact that Shokat Ali was dissatisfied with Star Tex's services and was seeking out a new supplier (RRV4,p.55,97-105,122,191-192). It turned out to be Colorado County. The fact that Colorado County became the new supplier is inconsequential to this element because Shokat Ali intended to terminate Day & Night's relationship with

Star Tex anyway (RRV4,p.91-92). Star Tex has failed to provide evidence supporting an alternative position relating to this element of tortious interference.

### D. No Evidence to Support Award of Contractual Damages

Star Tex failed to submit the proper measure of damages and failed to meet its burden to secure jury findings sufficient to support a judgment. The term "contractual damages" is not a proper measure of damages. It is ambiguous and misleading. This term failed to direct the jury's attention to any meaningful legal standard for awarding damages, and cannot support rendition of judgment against Colorado County.

Star Tex is limited to "contractual damages". Paragraph 23 of the contract clearly provides:

> Star Tex will deliver at the posted terminal price plus
> .0100 (One) cent per gallon plus transportation for profit
> (CCOC Brief Appendix 1).

The contract only speaks of a 1¢ per gallon profit (RRV3,p.150). The only measure of contractual profit is found here. Star Tex acknowledged that transportation was not an element for calculation of profits (RRV3,p.148-150).

These "contractual damages" awarded by the jury are not provided for in the contract. The contract provisions provide the amount of "contracted profits" that Star Tex could be entitled to receive. Multiplying the 521,208 gallons (12 months)

8

times 1¢ per gallon totals $5,212.08. That is the maximum amount of damage recoverable by Star Tex from Colorado County.

According to Sohail Ali's testimony, he terminated the contract with Star Tex (RRV4,p.248-250) and therefore, Star Tex would only be entitled to damages for the remaining 11 months of the year-to-year extension. This would make the maximum amount recoverable by Star Tex only $4,777,74.

## CONCLUSION

A motion for new trial is not a prerequisite to an appellate complaint about the legal sufficiency of evidence. Tex. R. Civ. P. 324(a), (b). Star Tex has failed to provide evidence to support all of the elements of its cause of action for tortious interference with an existing contract. Specifically, there is no evidence that Colorado County committed any act that could be construed as willful and intentional interference to any purported agreement between Day & Night and Star Tex.

Further, there is no evidence to support Star Tex's calculation of damages. Particularly, there was no complete damage calculation submitted by Star Tex as required by law. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41 (Tex.1998), and the mixed methodology employed by Star Tex causes the opinion to lack reliability. *Holt Atherton Indus., Inc. v. Heine* 835 S.W.2d 80, 85 (Tex.1992).

9

# **PRAYER**

WHEREFORE, PREMISES CONSIDERED, for these reasons, and in the interest of justice and fairness, Colorado County asks the Court to reverse the Jury's findings and render judgment for Appellant, Colorado County Oil Company, Inc.

Dated, this the 10th day of September, 2015

Respectfully submitted,

/s/ Donald H. Grissom
**Donald H. Grissom**
GRISSOM & THOMPSON, LLP
TX State Bar No. 08511550
don@gandtlaw.com
509 West 12th Street
Austin, Texas 78701
512/478-4059
512/482-8410 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in compliance with Texas Rules of Appellate Procedure, via facsimile, electronic case filing, or certified mail return receipt requested, on September 10, 2015

/s/DonaldHGrissom
Donald H. Grissom

## CERTIFICATE OF COMPLIANCE

I hereby certify on this date that the foregoing document contains 2,131 words.

/s/DonaldHGrissom
Donald H. Grissom