NUMBER 13-99-468-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI



____________________________________________________________


SERVICE CORPORATION INTERNATIONAL 

MANAGEMENT CORPORATION AND SERVICE

CORPORATION INTERNATIONAL TEXAS

FUNERAL SERVICES, INC. D/B/A BUENA VISTA

BURIAL PARK, Appellants,


v.


ANGEL S. GALVAN, MARIA GUADALUPE

GALVAN AND ANGELITA S. BENAVIDEZ, Appellees.

____________________________________________________________


On appeal from the 103rd District Court of Cameron

County, Texas.

____________________________________________________________


OPINION



Before Justices Hinojosa, Yañez, and Chavez(1)


Opinion by Justice Chavez



 A jury found that appellants Service Corporation International
Management Corporation and Service Corporation International Texas
Funeral Services, Inc. ("SCI") made negligent representations to
appellees Angel S. Galvan, Maria Guadalupe Galvan and Angelita S.
Benavides about the availability of cemetery plots for sale, and that SCI
made a fraudulent representation to Angel S. Galvan and Maria
Guadalupe Galvan about the location of their son's burial plot. SCI
raises eleven points of error. We affirm the judgment of the trial court.

 Because appellants attack the legal and factual sufficiency of the
evidence, and the facts to this case are somewhat complicated, we will
address the facts in some detail. In 1989, Angel S. Galvan and Maria
Guadalupe Galvan ("the Galvans") purchased two cemetery plots from
SCI. In 1994, their grandson Marc died and was buried in one of these
two plots. After Marc was buried, SCI offered to sell Angelita S.
Benavides ("Benavides"), mother of Marc and daughter of the Galvans,
seven additional plots close to where Marc was buried. Benavides
contracted for three of the plots, her sister Maria Anita Reyna
contracted for two plots, and the Galvans contracted for two plots. 

 According to SCI's records, when SCI contracted to sell these
seven plots, each plot was already owned by Noelia DeLeon.(2) 
Benavides and her sister both lost their plots when each was unable to
maintain regular payments on the plots. On September 19, 1997,
Benavides again purchased two of the three plots that, according to
SCI's records and DeLeon, were already sold to DeLeon. Again,
Benavides was unable to maintain consistent payments and lost
ownership rights to the cemetery plots.

 In 1995, Benavides purchased a separate plot, next to her son
Marc's grave, but lost it because she could not pay for it. In February
1997, Benavides again purchased this plot. 

 On September 2, 1997 Jose Angel Galvan, the Galvans' son, and
Benavides's brother, died. According to the testimony at trial, Yolanda
Galvan, Jose Angel Galvan's widow, sent her father-in-law, appellee
Angel Galvan, as her agent to handle the arrangements with SCI. Angel
Galvan testified that an SCI employee told him that his plots (which
were actually owned by DeLeon) were a few feet away from his
grandson Marc. Based on this information, Angel Galvan instructed SCI
to bury Jose Angel Galvan in one of his plots. In order to do this, SCI
required that the Galvans transfer their ownership rights in another plot
because SCI requires that payment be made in full before interment,
and the Galvans had not completed payments on the plot where Jose
Angel was to be buried. 

 According to the testimony of Yolanda Galvan, that same day the
same SCI sales representative asked Yolanda where she wanted Jose
Angel Galvan buried. Yolanda had allowed Angel to make all of the
arrangements, but then, because she wanted her husband to be buried
where she could later be buried next to him, allowed the SCI sales
representative to sell her another plot. Angel testified that he was not
present at this time, having left to buy a suit for his son to be buried in.

 Soon thereafter, the Galvans signed a quit-claim deed to transfer
ownership of the plot where Jose Angel was going to be buried to
Yolanda . SCI provided the deed for their signature after having made
different representations to the Galvans and Yolanda as to where Jose
Angel would be buried. The Galvans did not know that their son was
going to be buried in a different location than had been represented to
them before they signed the deed. The deed showed that the cemetery
plot was actually much further from Marc than the Galvans understood
it to be. The Galvans first realized this when they arrived at the
cemetery for the burial. Jose Angel was buried in the spot farther away
from Marc, but, after being informed of this misunderstanding, SCI
agreed to reinter Jose Angel next to Marc. Only after Jose Angel was
reinterred, did SCI notify anyone that the plot was actually owned by
DeLeon. Jose Angel was then buried a third time.

 In its first issue, SCI argues that the trial court did not have
jurisdiction to hear this case without Yolanda as an indispensable party
to the suit, because, as Jose Angel's surviving spouse, only she can
bring a claim for the wrongful burial, disinterment or exhumation of
Jose Angel's body. See Tex. Health & Safety Code Ann. §§ 
711.002(a),(d), 711.004(a),(b) (Vernon Supp. 2001). SCI raises this
issue for the first time on appeal. SCI did not plead that the decedent's
wife was a necessary party as required by the rules of civil procedure. 
See Tex. R. Civ. P. 39. 

 Prior to the amendment of rule 39 in 1971, a failure to include an
indispensable party was fundamental error which could be raised to
attack the court's jurisdiction on appeal. See e.g., Petroleum Anchor
Equip., Inc. v. Tyra, 406 S.W.2d 891, 893 (Tex. 1965); Sharpe v.
Landowners Oil Ass'n, 92 S.W.2d 435, 436 (Tex. 1936). The
amendment to rule 39 in 1971 rendered inoperative most of the
potential for fundamental error due to failure to include an indispensable
party. McBurnett v. Gordon, 534 S.W.2d 370, 372 (Tex. Civ. App.--Beaumont 1976, pet ref'd n.r.e.).

 "Under the provisions of our present Rule 39 it would be rare
indeed if there were a person whose presence was so indispensable in
the sense that his absence deprives the court of jurisdiction to
adjudicate between the parties already joined." Cooper v. Texas Gulf
Indus., Inc., 513 S.W.2d 200, 203 (Tex. 1974); see Cox v. Johnson, 638
S.W.2d 867, 867-68 (Tex. 1982) (supreme court "disapproved" of this
Court's holding that failure to join a necessary party was fundamental
error, but denied the writ of error because of other meritorious issues
in the appeal). Fundamental error survives today only in those rare
instances where the record shows on its face that the court lacked
jurisdiction or that the public interest is directly and adversely affected
as that interest is declared in the statutes and constitution of this state. 
Pirtle v. Gregory, 629 S.W.2d 919, 919 (Tex. 1982); see e.g. Eddows v.
Oswald, 621 S.W.2d 843, 846 (Tex. App.--Fort Worth 1981, no writ)
(brother of alleged assassin Lee Harvey Oswald not allowed to get
injunction preventing wife of deceased from exhuming body to perform
autopsy when wife had not delegated any of her authority to anyone
and clearly wanted the body disinterred).

 The supreme court in Cooper explained, "Contrary to our emphasis
under Rule 39 before it was amended, today's concern is less that of
the jurisdiction of a court to proceed and more a question of whether
the court ought to proceed with those who are present." Cooper, 513
S.W.2d at 204. If the trial court had the opportunity to rule on the
joinder of decedent's spouse, it could have determined "whether in
equity and good conscience the action should proceed among the
parties before it, or should be dismissed, the absent person [decedent's
spouse] being thus regarded as indispensable." Tex. R. Civ. P. 39(b).

 One of the practical factors an appellate court can take into
consideration in holding that an absent party was not jurisdictionally
indispensable is whether or not the case "had actually been tried as to
those parties who were present and there was no objection at the trial
level concerning the nonjoinder of a party. . . . [A]t the appellate stage
there is reason not to throw away a judgment just because it did not
theoretically settle the whole controversy." Cooper, 513 S.W.2d at 204
(emphasis added). Since SCI did not object at the trial level to the
nonjoinder of Yolanda Galvan, it has waived the issue of joinder of the
decedent's wife.

 The absence of the decedent's wife did not deprive the trial court
of jurisdiction between the parties before it. The Galvans do not argue
that SCI made negligent representations and committed fraud towards
decedent's wife; therefore she is not a necessary party to that part of
the suit. In regard to the other issues, the trial court resolved the
dispute between the parties before it even if "it did not theoretically
settle the whole controversy." Cooper, 513 S.W.2d at 204. We
overrule SCI's first issue.

 As part of its second, fourth, fifth and sixth issues, SCI argues that
the trial court erred by allowing the submission of a single damage
question for each plaintiff for multiple theories of recovery. The jury
was charged as SCI requested it to be charged. The charge did not
include the submission of a single damage question for each plaintiff for
multiple theories of recovery. SCI did not object to the charge. Error in
the charge must be preserved by distinctly designating the error and the
grounds for objection. Tex. R. Civ. P. 274; Cosgrove v. Grimes, 774
S.W.2d 662, 665-66 (Tex. 1989); Wilgus v. Bond, 730 S.W.2d 670, 672
(Tex. 1987); Lanphier Constr. Co. v. Fowco Constr. Co., 523 S.W.2d 29,
34 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd n.r.e.). Any possible
error in the organization of the damages question submitted by SCI is
therefore not preserved for our review.

 In its second issue, SCI claims that it owed no duty with respect
to the location of the decedent's interment or his disinterment and that
the evidence is both legally and factually insufficient to support the
jury's finding that SCI was negligent with respect to the location of the
decedent's interment or his disinterment.

 When reviewing challenges to the legal sufficiency of the evidence,
we consider all the evidence and inferences in the record in a light most
favorable to the party in whose favor the verdict has been rendered and
indulge every reasonable inference in that party's favor. See Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d
41, 48 (Tex. 1998). We overrule such points if the findings are
supported by more than a scintilla of evidence. Id. In contrast, factual
sufficiency challenges require that we consider and balance all the
evidence. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989). We overrule factual insufficiency points of error unless the
evidence supporting a finding is so weak that the finding is against the
great weight and preponderance of the evidence and clearly wrong and
unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

 SCI had a statutory duty to the decedent's spouse. Tex. Health &
Safety Code Ann. §§ 711.002(a),(d), 711.004(a),(b) (Vernon Supp. 2001). 
But when SCI represented to the Galvans that their son would be buried
at a certain location, and accepted the transfer of the plot the Galvans
had paid for, SCI assumed a duty to the Galvans to act with due care. 
Herman Hosp. v. National Standard Ins. Co., 776 S.W.2d 249, 253 (Tex.
App.--Houston [1st Dist.] 1989, writ denied) ("It is well settled that
even though one does not have a duty to act, if one acts voluntarily, he
must do so with due care and is generally liable for negligence"). 
Appellees alleged, and the jury concluded, that SCI breached its duty in
providing this service. When SCI acted in response to the Galvans'
request to reinter Jose Angel, it likewise assumed a duty of due care. 
Id. 

 The jury heard evidence that Yolanda had agreed to let her father-in-law make the arrangements for her husband's burial, that Angel told
SCI that he was making the arrangements, and that SCI's sales
representative understood that he was making the arrangements. SCI
completed a transaction with Angel for the burial of his son and then
contracted with Yolanda to bury him elsewhere. 

 At least five times SCI represented to the Galvans and Benavides
that it could sell cemetery plots which, at the time SCI made the
representations, it did not own. If, while in the course of a business
transaction, a party supplies false information for the guidance of others
in their business transactions, the party supplying the false information
is subject to liability for pecuniary loss caused to the misguided parties
by their justifiable reliance upon the information if the supplying party
fails to exercise reasonable care or competence in obtaining or
communicating the information. McCamish, Martin, Brown & Loeffler
v. Appling, 991 S.W.2d 787, 791 (Tex. 1999).

 The evidence in support of the jury's finding is more than the
scintilla of evidence required by law. See Browning-Ferris, 865 S.W.2d
at 928. The jury's finding is not against the great weight and
preponderance of the evidence; nor is it clearly wrong and unjust. See
Ortiz, 917 S.W.2d at 772. We overrule SCI's second issue.

 In its third issue, SCI argues that the trial court erred in refusing
to allow it to present evidence of appellees' failure to accept a
settlement offer. Appellate review of a trial judge's decision to admit
evidence is governed by an abuse of discretion standard. Jackson v.
Van Winkle, 660 S.W.2d 807, 810 (Tex. 1983); Jones v. Jones, 890
S.W.2d 471, 474 (Tex. App.--Corpus Christi 1994 writ denied). The
Texas Rules of Evidence provide that:

[e]vidence of (1) furnishing or offering or promising to
furnish, or (2) accepting or offering or promising to accept,
a valuable consideration in compromising or attempting to
compromise a claim which was disputed as to either validity
or amount is not admissible to prove liability for or invalidity
of the claim or its amount.


Tex. R. Evid. 408. If SCI had offered to release the contractual
requirement to make payments without compromise, condition, or
settlement, such evidence would not be prohibited by rule 408. Gunn
Infinity, Inc. v. O'Bryne, 996 S.W.2d 854, 859 (Tex. 1999) ("If a
defendant is truly offering to mitigate, the offer cannot implicitly or
explicitly seek a release of the plaintiff's claims. It must be an
unconditional offer to mitigate."). Appellees' choice not to accept the
settlement offer neither negates their contractual obligation to make
payments on the plots nor makes the compromise offer rebuttal to
counsel's comment that SCI continued to accept such payments. We
see no abuse of discretion, and overrule SCI's third issue.

 In its fourth issue, SCI argues that there was no evidence, or in the
alternative, legally and factually insufficient evidence of any DTPA
violations. The jury found that SCI had violated sections 17.46(b)(5),(7)
and (12) of the DTPA.(3) There was evidence presented to the jury that
SCI made affirmative representations that it would bury Jose Angel at
a location and that it then did not do so. SCI made affirmative
representations that it could reinter Jose Angel at a location where it
could not because they did not own the location. SCI made affirmative
representations orally and by written agreement that it could convey
title to plots which it did not own. See Smith v. Herco, Inc., 900
S.W.2d 852, 858 (Tex. App.--Corpus Christi 1995) (finding of DTPA
violations where real estate agency made oral and written affirmative
representation of ability to convey clear title, when unknown to the
agency, it could not). The evidence supporting the jury's finding is
more than the scintilla of evidence required by law. See Formosa
Plastics, 960 S.W.2d at 48. The jury's finding is not against the great
weight and preponderance of the evidence; nor is it clearly wrong and
unjust. See Ortiz, 917 S.W.2d at 772. We overrule SCI's fourth issue.

 In its fifth issue, SCI argues that the evidence is legally and
factually insufficient to support the jury's finding that SCI engaged in an
unconscionable course of action that was a producing cause of
damages to the plaintiffs.(4) Violation of a consumer's trust by a
professional in the course of business is a DTPA violation.(5) See Latham
v. Castillo, 972 S.W.2d 66, 69 (Tex. 1988). The evidence described
above shows more than a scintilla of evidence that appellees trusted
SCI to provide a professional service, and that SCI violated that trust. 
See Formosa Plastics, 960 S.W.2d at 48. The jury finding is supported
by the record, and not against the great weight and preponderance of
the evidence. See Ortiz, 917 S.W.2d at 772. We overrule SCI's fifth
issue.

 In its sixth issue, SCI argues that there is legally and factually
insufficient evidence to support the jury's judgment that it committed
fraud against appellees. The elements of common-law fraud are that (1)
a material representation was made; (2) the representation was false;
(3) when the representation was made the speaker knew it was false
or made it recklessly without any knowledge of the truth and as a
positive assertion; (4) the representation was made with the intention
that it be acted upon by the other party; (5) the party acted in reliance
upon the representation; and (6) the party suffered injury. Johnson &
Higgins of Texas, Inc. v. Kenneco Energy, Inc., 692 S.W.2d 507, 524
(Tex. 1998).

 The jury received testimony from Angel that SCI had no intention
of burying Jose Angel in close proximity to Marc's grave. The jury also
heard testimony from the cemetery's office manager that the
saleswoman who sold the separate plots for the same burial, first to the
Galvans, then to their daughter-in-law, stood to earn a commission
from each sale. The jury could have believed that when SCI reinterred
Jose Angel in a plot close to the Galvans' other, partially-paid plots, that
SCI recklessly represented that it could bury him there without any
knowledge of the truth, while making positive assertions that their son
was buried in an unencumbered space in the cemetery.

 The record contains more than a scintilla of evidence that SCI
committed fraud. See Formosa Plastics, 960 S.W.2d at 48. The jury
finding of fraud is not against the great weight and preponderance of
the evidence. See Ortiz, 917 S.W.2d at 772. We overrule SCI's sixth
issue.

 In its seventh issue, SCI argues that the testimony of Dr. William
Valverde should have been admitted with a limiting instruction. Dr.
Valverde testified about mental anguish damages. "A successful
challenge to evidentiary rulings usually requires the complaining party
to show that the judgment turns on the particular evidence excluded or
admitted." City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995). The jury instruction did not segregate particular theories of
recovery, and there was no objection to this non-segregation of theories
at trial. Since the jury instruction did not segregate particular theories
of recovery, the judgment does not turn on this particular evidence, and
therefore there would be no point in limiting this testimony. We
overrule appellant's seventh point of error.

 In it eighth, ninth and tenth issues, SCI argues that there was no
evidence, or in the alternative, legally and factually insufficient evidence,
of mental anguish suffered by the Galvans, and that the jury erred by
awarding any damages to Angelita Benavides. Proof of mental anguish
damages requires direct evidence of the nature, duration or severity of
one's anguish resulting in a substantial disruption in the plaintiff's daily
routine. Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). 
In order to recover for mental anguish, a party must establish more than
worry, anxiety, vexation, embarrassment or anger. Id. Courts are to
closely scrutinize awards of mental anguish damages. Id.

 The evidence of Angel Galvan's mental anguish heard by the jury
included the testimony of a psychiatrist, his daughters Maria and
Angelita, his wife, and Angel Galvan himself. The jury also heard
evidence of Mrs. Galvan's mental anguish, including testimony of a
psychiatrist, the testimony of her daughter Maria, and her own
testimony. 

 We have closely reviewed the evidence described above and
determined that there is more than a scintilla of evidence that the
Galvans suffered mental anguish and that SCI failed to exercise
reasonable care or competence in obtaining or communicating
information when selling the cemetery plot to Benavides. See
Browning-Ferris, 865 S.W.2d at 928. The jury finding that the Galvans
suffered mental anguish and that SCI failed to exercise reasonable care
or competence in obtaining or communicating information when selling
the cemetery plot to Benavides is not against the great weight and
preponderance of the evidence. See Ortiz, 917 S.W.2d at 772. 

 SCI argues that the jury erred by awarding any damages to
Angelita Benavides because there is no evidence, or insufficient
evidence of a gross disparity in consideration paid and the value
received by Ms. Benavides. The jury question did not require the jury
to find a "gross disparity," and SCI has directed this court to no law
that requires a "gross disparity" between consideration paid and value
received in order to be awarded damages. SCI sold Benavides property
which it did not own. The jury heard her testimony that she justifiably
relied upon SCI's false claims of ownership and suffered a pecuniary
loss as a result of this reliance. See Appling, 991 S.W.2d at 791 (Tex.
1999). We overrule SCI's eighth, ninth and tenth issues.

 In its eleventh issue, SCI argues that the trial court erred by
granting appellees' motion for judgment notwithstanding the verdict
awarding attorneys fees in the event of appeal because the trial court's
jurisdiction had expired. Judgment in this case was signed on April 23,
1999. SCI's motion for new trial was denied on July 1, 1999. Fourteen
days later, on July 15, 1999, appellees filed a motion for judgment
notwithstanding the verdict. This motion was granted on August 2,
1999, 32 days after appellant's motion for new trial was denied.

 A motion for judgment notwithstanding the verdict may be filed
after a judgment has been entered but before it becomes final. 
Needsville Indep. Sch. Dist. v. S.P.J.S.T. Rest Home, 566 S.W.2d 40, 42
(Tex. App.--Beaumont 1978, no writ). The trial court retained
jurisdiction over this case until thirty days after SCI's motion for new
trial was overruled. Tex. R. Civ. P. 329b(e). At this time the judgment
became final. Id. Here, the thirtieth day fell on a weekend, and the
order granting judgment notwithstanding the verdict was signed the
following Monday. When the last day of a court's plenary period falls
on a weekend the period runs until the end of the next day which is not
a Saturday, Sunday or a legal holiday. Tex. R. Civ. P. 4. The court
therefore had the power to rule on the motion. See McClelland v.
Partida, 818 S.W.2d 453, 455 n.2 (Tex. App.--Corpus Christi 1991, writ
dism. w.o.j.). We overrule SCI's eleventh issue.

 We AFFIRM the judgment of the trial court.

 MELCHOR CHAVEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3.

Opinion delivered and filed this

the 18th day of January, 2001.

1. Retired Justice Chavez assigned to this court by the Chief Justice
of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. §
74.003 (Vernon 1988).
2. Ms. DeLeon is not involved in this suit.
3. These alleged DTPA violations are as follows: (b)(5) representing
that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits, or quantities which they do not have; (b)(7)
representing that goods or services are of a particular standard, quality,
or grade, or that goods are of a particular style or model, if they are of
another; and (b)(12) representing that an agreement confers or involves
rights, remedies, or obligations which it does not have or involve, or
which are prohibited by law. Tex. Bus. & Com. Code Ann. §
17.46(b)(5),(7),(12) (Vernon Supp. 2001).
4. "Unconscionable action or course of action means an act or
practice which to a consumer's detriment, takes advantage of the lack
of knowledge, ability, experience, or capacity of the consumer to a
grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5) (Vernon
Supp. 2001).
5. In 1995 the DTPA was amended to preclude causes of actions
arising from the sale of services. See Tex. Bus. & Com. Code Ann. §
17.49(c) (Vernon Supp. 2001). However this exemption provides
exceptions under the following circumstances:


 (1) an express misrepresentation of a material fact that cannot be
characterized as advice, judgment, or opinion;

 (2) a failure to disclose information in violation of § 17.46(b)(23);

 (3) an unconscionable action or course of action that cannot be
characterized as advice, judgment, or opinion; or

 (4) breach of express warranty that cannot be characterized as
advice, judgment or opinion. 


Id. Appellants' cause of action falls into each of these exceptions.