NO. 07-06-0157-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 2, 2007
_____

RANCHO LA VALENCIA, INC. AND CHARLES R. "RANDY" TURNER, APPELLANTS

V.

AQUAPLEX, INC. AND JAMES EDWARD JONES, JR., APPELLEES
_____

FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY;

NO. GN 03-004287; HONORABLE SUZANNE COVINGTON, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Background

In 2000, appellant, Rancho La Valencia (Rancho), acquired real estate in Travis County, Texas, known as the Tumbleweed property. Appellant, Charles R. Turner (Turner), was the president of Rancho. In 2002, Rancho began developing the property by obtaining a Site Development Plan Permit from the City of Austin. Original plans called for the building of 89 condominium units. Fifty-four of these units were to be detached units, while the remaining 35 units were to be located in a 12 story building. Development

financing to install water and sewer lines, streets, and other infrastructure was obtained through OmniBank, N.A. The Tumbleweed property was pledged as collateral for the developmental financing and Turner also personally guaranteed the debt.

By 2002, the property was plagued by delays and cost overruns. OmniBank required Rancho and Turner to hire a new project manager to oversee the project. By 2003, OmniBank had stopped advancing any new funds for the project and indicated that no new money would be forthcoming unless Rancho and Turner were able to infuse the project with additional capital. An employee of Rancho began discussions with appellee James Edwards Jones, Jr. (Jones) regarding his interest in becoming part of the project. Ultimately, Jones made a decision to invest $400,000 for a 51 percent interest in a joint venture with Rancho to complete the project. Thereafter, a formal Joint Venture Agreement (JVA) was entered into and Jones assumed management of the project. Prior to signing the JVA, Jones completed a due diligence review of the project. The thoroughness of Jones's due diligence review was a hotly contested issue during the trial. Jones entered into the joint venture through a corporate entity, appellee Aquaplex, Inc. (Aquaplex), that had been formed for the specific purpose of entering into the joint venture.

After the JVA was executed, the relationship between the parties quickly became acrimonious. There was an attempt by Rancho to purchase Aquaplex's interest in the joint venture. Later, Aquaplex made a cash call under the terms of the JVA. However, Rancho and Turner did not contribute any additional cash for the cash call. Litigation commenced in November 2003 when Rancho and Turner filed suit against Aquaplex and Jones alleging a number of causes of action. Aquaplex and Jones subsequently filed counterclaims

2

against Rancho and Turner. By December 2004, the OmniBank loan was in default. On March 11, 2005, the parties entered into mediation, which resulted in the signing of a Memorandum of Settlement Agreement (MSA).

The MSA had a number of requirements for both parties, but, for purposes of this opinion, two are of significance. First, the MSA required that Rancho and Turner establish an account at OmniBank for $100,000 to be used to pay six months worth of interest to OmniBank and property taxes on the JVA property. Second, the MSA contemplated the subsequent execution of a formal settlement agreement. The OmniBank account was never established and the formal settlement agreement was never executed. Negotiations regarding the formal settlement agreement broke down due to the parties' inability to agree on additional terms not covered by the MSA. Because no formal settlement agreement could be reached, the lawsuits were set for trial in March 2005. Shortly before trial was to commence, appellants' counsel filed a motion to withdraw alleging that his services had been used to perpetrate a fraud. The trial court permitted counsel to withdraw three days before trial and denied appellants' request for a continuance. Rancho then filed a bankruptcy in the Dallas division of the Northern District of Texas and all matters pending in state court were stayed.

During the pendency of the bankruptcy, a $4,050,000 offer to purchase the JVA property was received from a third party. This offer became known as the Greenberg contract. Appellants did not consider the contract price to be sufficient and advised appellees of this fact. At or about this time, a notice of *lis pendens* was filed in the deed records of Travis County identifying the JVA property as property related to an adversarial

3

action pending in the United States Bankruptcy Court for the Northern District of Texas. Subsequently, the bankruptcy was dismissed by the bankruptcy judge as a "bad faith" filing. Concurrent with the dismissal of the bankruptcy, the adversarial action was remanded to state court. The Greenberg contract never closed.

The trial court commenced pre-trial hearings regarding whether appellants' previous counsel would be subject to examination by way of deposition regarding certain communications with his clients. The trial court ruled that the communications between appellants and their prior counsel were not privileged, citing the crime-fraud exception to the attorney-client privilege. During other pre-trial matters, the trial court ruled that appellants had, as a matter of law, breached the MSA.

The trial commenced on November 28, 2005, and, on December 1, 2005, the trial court directed a verdict against all of appellants' claims. Following the trial, the jury returned a verdict finding that appellants had breached both the JVA and the MSA and committed fraud in connection with both agreements. Additionally, the jury found the *lis pendens* to have been wrongfully filed. The jury awarded damages to appellees for injuries suffered as a result of appellants' conduct. After hearings on the verdict, during which appellees elected to recover damages for appellants' fraud relating to the MSA, the trial court granted judgment in favor of appellees and awarded them actual and punitive damages. The trial court also granted appellees declaratory relief, injunctive relief, and attorney fees in connection with Rancho's breach of the JVA. It is from this judgment that appellants appeal.

By eight issues, with multiple sub-parts, appellants contend that: 1) appellees were allowed a double recovery because the judgment awarded relief for both the MSA fraud finding and the JVA breach finding; 2) the fraud finding should be reversed for legal insufficiency; 3) the evidence was legally insufficient to sustain a finding that appellants breached either the MSA or JVA; 4) the trial court erred, as a matter of law, in finding that Rancho had forfeited its rights under the JVA; 5) the evidence was legally and factually insufficient to support a finding that Rancho's interest in the joint venture was zero; 6) the trial court committed reversible error in finding joint and several liability against Turner; 7) as a matter of law, there is no cause of action for wrongful *lis pendens*, therefore, such an alleged cause of action cannot support a judgment; and 8) the trial court committed a number of errors that should result in remand, if this court does not render judgment in favor of appellants. We reverse and render.

## Double Recovery

By their first issue, appellants contend that the judgment of the trial court awarded appellees a double recovery by allowing damages under the fraud in the inducement allegations relating to the MSA and declaratory and injunctive relief, plus attorney fees, under the breach of the JVA cause of action. Appellees counter by contending that the relief granted redresses very specific and distinct injuries and is, therefore, not double recovery.

That a party is allowed but one recovery for an injury is axiomatic in Texas law. Bradshaw v. Baylor Univ., 126 Tex. 99, 84 S.W.2d 703, 705 (1935). This single injury rule

5

has been applied when defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 (Tex. 1991). Accordingly, the inquiry begins by assessing the nature of the injury for which appellees are seeking redress.

The record reflects that, prior to the execution of the MSA, appellees' live pleading alleged fraud in connection with the execution of the JVA, breach of contract and warranty in connection with the JVA, and negligent misrepresentation in connection with execution of the JVA. Appellees also requested declaratory relief and attorney fees. Following execution of the MSA and remand from the bankruptcy court, appellees filed their Amended Third Party Petition, Counterclaim For Declaratory Judgment, Application for Temporary Restraining Order and Temporary Injunction, and Motion to Void Lis Pendens. In this amended pleading, appellees alleged the same causes of action and requests for relief as before, but added claims that appellants breached the MSA or, alternatively, fraudulently induced appellees to enter into the MSA. However, by all their claims, appellees complain of appellants' interference with and prevention of appellees operating the joint venture profitably, selling their interest in the joint venture, or selling the joint venture property and recouping their investment.

Appellees contend that the recoveries they sought were based on separate agreements executed on separate dates and the breach of each resulted in separate and distinct injuries. In support of this contention, appellees cite Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361, 367 (Tex. 1987), for the proposition that separate recoveries are allowed in the same lawsuit. However, the Birchfield case holds that only one recovery

6

is available to redress one injury, even if the cause of the injury is actionable under multiple causes of action. Id. In their original pleading, appellees' complaints centered around being fraudulently induced into the JVA and, after having entered into the JVA, not being allowed to operate the joint venture profitably due to appellants' breaches of the JVA. To try to resolve their issues, the parties settled by way of the MSA, which appellees subsequently claimed was both fraudulently induced and breached by appellants. Appellees requested damages for the fraudulent inducement into the MSA. Fraudulent inducement damages allow appellees to reject the MSA and obtain benefit of the bargain damages. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 49-50 (Tex. 1998). However, because the MSA constituted a settlement of the pending dispute regarding the JVA, it could do no more than reflect the damages appellees suffered by their JVA related causes of action. While appellees could, and did, prove multiple theories of recovery against appellants, appellees could only obtain redress for their single injury. Birchfield, 747 S.W.2d at 367.

Having determined that appellees have but one injury, the question becomes does the judgment grant multiple relief for that injury. The judgment purports to grant monetary damages for fraud in connection with the MSA and declaratory and injunctive relief in connection with the JVA. However, because the MSA did no more than reflect the damages appellees suffered in connection with the JVA, the judgment awards multiple recoveries for a single injury. This violates the single injury doctrine and must be reversed. Id.

7

The judgment further grants appellees a recovery of $283,624 in attorney fees, which is the amount of attorney fees found by the jury for breach of the MSA. Having elected to proceed on the fraud allegation in connection with the MSA, appellees cannot recover under the breach of MSA allegation.  It is well settled law in Texas that, when fraud and breach of contract are both alleged, an election to proceed under one theory generally prohibits recovery of damages under the other theory.  Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 676-77 (Tex. 2000).  However, appellees argue on appeal that there are two other jury findings which support the award of attorney fees, namely breach of the JVA and declaratory relief under the JVA.  For the same reasons stated above, any recovery related to the JVA would violate the single injury doctrine.  Bradshaw, 84 S.W.2d at 705. Accordingly, this portion of the judgment must also be reversed.

Sufficiency of the Evidence

Appellants' next issues contend that the evidence is legally insufficient to support the findings of fraud and the damages associated with the fraud findings as they pertain to the MSA and, in the alternative, if the evidence is legally sufficient, it is factually insufficient on the same fraud issues.  When both legal and factual sufficiency are raised, we must first address the issue of legal sufficiency.  Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981).

When conducting a legal sufficiency review, the cogent inquiry is, does the evidence at trial enable reasonable and fair minded people to differ in their conclusions. If so, then the jury must be allowed to do so.  City of Keller v. Wilson, 168 S.W.3d 802, 822

8

(Tex. 2005). As a reviewing court, we are not free to substitute our judgment for that of the trier of fact, so long as the evidence falls within the zone of reasonable disagreement. Id. In making this determination, the scope of review requires that we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. Id. at 807.

In a factual sufficiency review of an issue upon which appellees had the burden of proof, we consider all of the evidence, both favorable and unfavorable, to determine if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In making our determination as to factual sufficiency challenges, we do not reweigh the evidence and set the verdict aside merely because we feel that a different result is more reasonable. See Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986). The fact finder, whether jury or trial court in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The jury may believe one witness and disbelieve another. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The jury resolves inconsistencies in testimony. Id. Where enough evidence is before the jury that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the fact finder. See Herbert v. Herbert, 754 S.W.2d 141, 143-44 (Tex. 1988).

To recover for fraud, appellees were required to prove: 1) that a material representation was made, 2) that it was false, 3) that the speaker knew it was false when

9

made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion, 4) that the speaker made it with the intention that it be acted upon by the other party, 5) that the other party acted in reliance upon it, and 6) damages. T. O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992). Because of our ultimate disposition of the appellants' contentions, we will address the issue of the sufficiency of the evidence on the damages element, specifically whether appellees suffered damages as a result of the alleged misrepresentations made by appellants.[1]

Damages Associated With MSA Fraud

Appellants contend that the damages allegedly suffered by appellees as a result of the fraudulent inducement to enter the MSA were not proper fraud damages but were, in fact, breach of contract damages and that the evidence was insufficient to prove the causal connection between the fraudulent execution of the MSA and the damages claimed by appellees. When addressing the issue of damages for fraudulent inducement of a contract, the fraud must have been relied upon by the party bringing suit and that reliance must have caused injury. Formosa Plastics Corp. USA , 960 S.W.2d at 47.

Looking at the issue of the Greenberg contract first, the record reflects that the Greenberg contract was executed on June 24, 2005, some three months following the

---

[1]Appellants also contend that they did not commit fraud by failing to disclose to appellees what appellees already knew in connection with the execution of the JVA. However, in connection with recovery for fraud, during the motion for new trial hearing, appellees stated unequivocally that they were pursuing fraud in connection with the MSA only. Therefore, we need not address the appellants' issue regarding proof of fraud in connection with the JVA, as appellees have disavowed any such recovery.

10

execution of the MSA. Further, there is no testimony that the purchaser refused to close the purchase of the subject property because of the fraud in the execution of the MSA. The only evidence of the alleged damages suffered due to the fraud is that of appellee Jones. Jones testified about a chart that was purported to show the damages appellees suffered as a result of the failure to close the Greenberg contract. Yet, there is no record evidence showing that the Greenberg contract failed to close as a result of any purported fraud of appellants. In fact, there is no record evidence reflecting why the Greenberg contract did not close. As a result of this lack of evidence, the evidence is legally insufficient to support this element of appellees' damages.

In reviewing the damages that appellees claim to have suffered as a result of the loss of the OmniBank Forbearance Agreement, we note that the term of the forbearance agreement was for one year. However, the jury awarded a sum of money equal to the value of a two year forbearance based on the chart testified to by appellee Jones. Neither the chart nor the testimony of Jones provided any evidence of the value of the loss of the forbearance for one year. As a result, appellees have failed to present any evidence of the damages suffered as a result of the loss of the forbearance resulting from the fraudulent inducement of the MSA. Accordingly, the evidence is legally insufficient to support that portion of the judgment awarding damages for the loss of the forbearance.

In addressing the award of $35,000 in damages for attorney fees paid by appellees when appellant Rancho filed for protection in Bankruptcy Court for the Northern District of Texas, appellees simply state that the causal connection between the fees and the fraud in the execution of the MSA was appellants "secretly planning the bankruptcy." The

11

evidence at trial indicates that, after the execution of the MSA and the failure of appellant Turner to secure the additional $100,000 deposit to pay taxes and interest for a six month period, appellant Rancho filed for bankruptcy. There is no evidence linking the filing of bankruptcy to the execution of the MSA. The trial record contains testimony affirming that appellant Turner had spoken to an attorney in Dallas about filing a chapter 11 bankruptcy shortly before attorney Gorthey filed his motion to withdraw. In fact, all of the evidence indicates that the decision to file bankruptcy was not made until after the MSA was signed. The failure to establish a causal connection is fatal to appellees' claim for attorney fees as a consequential damage of the purported fraud. Id. Accordingly, the evidence is legally insufficient to support that portion of the judgment granting appellees recovery for attorney fees incurred in bankruptcy.

Finally, regarding the $100,000 bank account that appellant Rancho was to have established at OmniBank, the MSA did not call for this money to be paid to appellees. In order to prove damages for the failure to set up that account, appellees would be required to offer proof that they had to make and did make the required payments of interest and taxes in lieu of the account or that they were otherwise damaged by Rancho's failure to set up this account. There is no such proof. Accordingly, the evidence is legally insufficient to sustain that element of damages. Id. That portion of the judgment purporting to authorize appellees to collect this element of damages is reversed.

As the evidence is legally insufficient to support an award of any damages to appellees for appellants' fraud related to the MSA, we reverse the judgment of the trial court and render judgment that appellees take nothing.

Exemplary Damages

In as much as the award of damages has been set aside for legally insufficient evidence, the jury award of punitive damages against both appellants must likewise be set aside.  Actual damages must be proven before an award of punitive damages can be sustained.  Twin City Fire Ins. Co. v. Davis, 904 S.W.2d 663, 665 (Tex. 1995).

Appellants' Remaining Issues

Having determined that the judgment should be reversed and rendered, we need not address appellants' remaining issues.  TEX. R. APP. P. 47.1.

Conclusion

The judgment of the trial court is reversed and we render judgment that appellees take nothing by their suit.


Mackey K. Hancock
Justice