NO. 07-06-00157-CV
 
 IN THE COURT OF APPEALS
 
 FOR THE SEVENTH DISTRICT OF TEXAS
 
 AT AMARILLO
 
 PANEL C
 
--------------------------------------------------------------------------------
NOVEMBER 9, 2011
--------------------------------------------------------------------------------

 
 RANCHO LA VALENCIA, INC. AND
 CHARLES R. "RANDY" TURNER, APPELLANTS
 
 v.
 
 AQUAPLEX, INC. AND
 JAMES EDWARD JONES, JR., APPELLEES 
--------------------------------------------------------------------------------

 
 FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY;
 
 NO. GN304287; HONORABLE SUZANNE COVINGTON, JUDGE
--------------------------------------------------------------------------------

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
 
 OPINION
 The Supreme Court of Texas remanded this matter back to this Court for consideration of whether to remand for a new trial on damages or to suggest a remittitur, and to consider issues not considered in the original opinion. See Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 777 (Tex. 2009). 
 
 
 Background
 The factual background involved in this case is explained in some detail in our original opinion and we refer the reader to that recitation. See Rancho La Valencia, Inc. v. Aquaplex, Inc., 253 S.W.3d 728, 730-32 (Tex.App. -- Amarillo 2007). After a jury trial in 2005 that resulted in judgment being entered against Rancho La Valencia, Inc. (Rancho) and Charles R. "Randy" Turner (Turner), Rancho and Turner appealed alleging a number of errors. Our original opinion held that Aquaplex, Inc. (Aquaplex) and James Edward Jones (Jones) were limited to one recovery. Id. at 733. Additionally, our original opinion found that the award of $283,624 in attorney's fees for breach of the Memorandum of Settlement Agreement (MSA) could not stand because appellees had elected to recover under the fraud in the MSA allegation. Id. Further, we held that the evidence was legally insufficient to support the damages awarded by the jury for fraud in connection with the MSA. Id. at 734-36.
 Upon motion for rehearing, we addressed the issues of declaratory relief, the lis pendens, and injunctive relief. We held that the declaratory relief could not stand because the nature of the assignment upon which it was allegedly based was, in fact, a collateral assignment and not a complete assignment. Rancho La Valencia, Inc. v. Aquaplex, Inc., 297 S.W.3d 781, 784 (Tex.App. -- Amarillo 2008) (op. on reh'g). Further, we held that granting injunctive relief to appellees could not stand, and reversed the trial court's judgment in that regard. Id. at 785.
 In the Supreme Court's opinion, the Court set forth the elements of a fraud claim under the MSA. Aquaplex, 297 S.W.3d at 774. The Court then analyzed Rancho's argument that there was no evidence to support the intent element. Id. at 774-75. Ultimately, the Court held that there was legally sufficient evidence to support a finding of fraudulent intent. Id. at 775. Next, the Court addressed the issue of whether there was legally sufficient evidence for the damages awarded by the jury because of the fraudulent inducement under the MSA. Id. at 775-77. After analyzing the damages awarded, the Court held that there was legally sufficient evidence to support an award of damages for fraud under the MSA, however, not at the level awarded by the trial court. Id. at 776-77. Consequently, the Court remanded the matter to this Court to determine whether to remand for a trial on the issue of damages, suggest a remittitur, reconsider whether punitive damages are appropriate, and consider the factual sufficiency issues raised by Rancho but not yet decided by our previous opinions. Id.
 Analysis
 Prior to considering the issues that the Texas Supreme Court ordered us to consider, there remain some issues from the initial appeal which we must first consider. 
Ratification
 Appellants' initial appeal alleged that the trial court erred in refusing to submit appellants' ratification question to the jury. However, the ratification question, as suggested by appellants, went to the issue of fraud in connection with the Joint Venture Agreement (JVA). The record before us clearly demonstrates that appellees have foregone any recovery under the JVA and have elected to recover only under the fraud theory in connection with the MSA. Accordingly, there can be no abuse of discretion by the trial court in connection with the JVA because a failure to submit that issue could not have led to the rendition of an improper judgment. See Tex. R. App. P. 44.1(a)(1); Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990).
Exclusion of Evidence
 Appellants next complain that the trial court abused its discretion when the trial judge ordered that appellants could not elicit testimony that they had attempted to perform their obligation to fund the $100,000 requirement for interest and property taxes in connection with the JVA property under the terms of the MSA. A trial court abuses its discretion when it acts without regard to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Even if the trial court's stated reason for excluding the evidence was in error, if the trial court's evidentiary ruling is correct under any theory, we must uphold it. See State Bar of Tex. v. Evans, 774 S.W.2d 656, 658 n.5 (Tex. 1992).
 Appellants' contention is grounded on the theory that the trial court's exclusion of the evidence was based on the fact that testimony about conversations between trial counsel for both sides would require trial counsel be disqualified. Appellants' argument, when boiled down to its essence, is that the trial court could have allowed the testimony under Rule 3.08(a)(5) of the Rules of Professional Conduct. See Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a)(5), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G., app. A (West 2005). However, appellants have not cited this Court to any cases holding that where the trial court could have taken a certain action, but did not, it must necessarily amount to an abuse of discretion. As appellees point out, the Texas Supreme Court has concluded that disqualification of trial counsel is a severe measure that impacts a litigant's ability to have his case tried by counsel of his choice. See In re Nitla, 92 S.W.3d 419, 423 (Tex. 2002) (discussing disqualification of trial counsel in a mandamus proceeding). Thus, we have competing interests at play, namely, the interest of appellees to go forward with the counsel of their choosing and the interest of appellants to present the evidence at issue. 
In balancing these competing interests, we note that, the record demonstrates that the offer to fund the $100,000 account occurred after March 25, 2005, the final date for performance under the MSA. Further, the nature of the conversation was that appellants wanted to revive discussion of settlement under the MSA, while appellees already considered the MSA breached. Therefore, there is a real issue regarding whether the purported evidence had any relevance at that point in time. See In re Slusser, 136 S.W.3d 245, 248-49 (Tex.App. -- San Antonio 2004, orig. proceeding) (holding that, unless the offered testimony is necessary to establish an essential element on behalf of the testifying lawyer's client, the trial court should not disqualify counsel to allow the testimony). The timing of the proposed offer to revive the MSA leads us to the conclusion that the evidence was not relevant. 
 When reviewing the trial court's ruling in light of the record before us, we have determined that the trial court followed the guiding rules and principles of law at issue. See Downer, 701 S.W.2d at 241-42. Accordingly, the trial court could not have abused its discretion. Id. Therefore, appellants' issue regarding exclusion of the evidence about an offer to pay the $100,000 is overruled. State Bar of Tex., 774 S.W.2d at 658 n.5.
Declaration That Appellants Had Breached the MSA as a Matter of Law 
 Appellants next contend that the trial court erred when it issued an order, during a pre-trial hearing, finding appellants had breached the MSA as a matter of law. According to appellants, the order was in error because there was neither a motion to enforce the MSA pending before the trial court nor was there a motion for summary judgment pending before the trial court. The essence of appellants' complaint is that the trial court took this action without any proper request or authority to do so. 
 Appellants' contention does not consider the authority of a trial court to act pursuant to Texas Rule of Civil Procedure 166(g). See Tex. R. Civ. P. 166(g). Rule 166(g) permits a trial court to identify legal matters to be ruled on or decided by the trial court in a pre-trial hearing. Id. The record before us reflects that the trial court held a pre-trial hearing on November 28, 2005, that encompassed a number of issues and, during that hearing, the issue of appellants' failure to fund the MSA was discussed. At the conclusion of that discussion, the trial court ruled that appellants had breached the MSA as a matter of law. We are convinced that the trial court's act was correct pursuant to Rule 166(g) and was not error. See Walden v. Affiliated Computer Servs. Inc., 97 S.W.3d 303, 322 (Tex.App. -- Houston [14[th] Dist.] 2003, pet. denied). Accordingly, appellants' issue is overruled.
Crime-Fraud Exception
 Appellants next contend that the trial court committed harmful error when it found the crime-fraud exception applied to the testimony of appellants' previous attorney, Kemp Gorthey. It is appellants' position that no prima facie showing of fraud was made that authorized the trial court to admit Gorthey's testimony over appellants' assertion of privilege. Texas Rule of Evidence 503 provides that communications between a client and his attorney are privileged and the client can refuse to disclose, and prohibit others from disclosing, those confidential communications. Tex. R. Evid. 503(b), (c). However, Rule 503(d)(1) provides an exception to the privilege granted. The exception states:
(d) Exceptions. There is no privilege under this rule:
(1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a fraud.
Tex. R. Evid. 503(d)(1).
 On March 23, 2005, appellants' trial counsel filed a motion to withdraw and request for continuance. In his verified motion, Gorthey outlined, as cause for the motion, that he was of the professional opinion that appellants were attempting to use his services to perpetrate a fraud. The trial court allowed counsel to withdraw by written order entered on March 24, but denied the motion for continuance. On March 25, Rancho filed a voluntary petition in bankruptcy, and the case was removed to Federal Court that same day. While the bankruptcy proceeding was pending, appellees issued a subpoena duces tecum for Gorthey for August 24. On August 23, appellants applied for a protective order. A deposition was commenced on August 24, but the documents subpoenaed were furnished for an in camera inspection by the judge hearing only the adversary proceeding. Subsequently, on October 13, the Bankruptcy Court for the Northern District of Texas (Dallas Division) ruled that the bankruptcy had been filed in bad faith. The bankruptcy was dismissed with prejudice, and, on October 17, the case was remanded to State Court. 
 On October 19, appellees filed a motion to compel production of the documents and to depose Gorthey. The trial court in this matter considered the motion to compel on November 3, and, after an in camera inspection of the documents and hearing the arguments of counsel, it ordered that those documents be produced and the deposition of Gorthey be taken. The court expressly allowed appellees to question Gorthey about communications with his client regarding the subject matter of the fraud in question. No application for writ of mandamus was pursued by appellants following the trial court's ruling on the motion to compel. Prior to the trial of this matter, appellants urged no motions requesting a running objection to the introduction of the documents at issue or Gorthey's testimony. The matter was raised to a limited extent during the discussions of a motion in limine presented by appellants. However, during the trial of the case, appellants' voiced no objection when the documents at issue and Gorthey's testimony were introduced. Further, from the record, we find that Turner testified at length about the facts surrounding Gorthey's withdrawal and the allegations of fraud.
 In analyzing appellants' issue regarding the attorney-client privilege, we first observe that appellants did not challenge the ruling of the trial court that a prima facie case had been established by writ of mandamus. The pursuit of a writ of mandamus to reverse the ruling of the trial court is a method of presenting an allegation of an erroneous trial court ruling for review. See Barnes v. Whittington, 751 S.W.2d 493, 496 (Tex. 1988). However, appellants did not pursue such relief. 
The subject matter was discussed during a pre-trial hearing that considered a number of matters, including motions in limine. However, even if the record demonstrated that the evidence now complained of was part of that discussion, a ruling on a motion in limine preserves nothing for review. Richmond Condos. v. Skipworth Commercial Plumbing, Inc., 245 S.W.3d 646, 665 (Tex.App. -- Fort Worth 2008, pet. denied) (citing Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex. 1963)).
 The record further demonstrates that, when the documents were offered during the trial, appellants' counsel stated, "No objections to those, Your Honor." In order to preserve a complaint for our review, a party must present the trial court with a timely request, objection, or motion that states the specific grounds for the desired ruling. See Tex. R. App. P. 33.1(a). Here, appellants wholly failed to do so. Further, when a party affirmatively asserts that he or she has "no objection" to the admission of the complained-of evidence, any error in the admission of the evidence is waived, even in the face of a pre-trial ruling. See Tex. Dep't of Trasp. v. Pate, 170 S.W.3d 840, 850 (Tex.App. -- Texarkana 2005, pet denied). Accordingly, nothing has been preserved for appeal and the complaint has been waived. Richmond Conds., 245 S.W.3d at 665 (citing Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g)). Finally, the record shows that the subject matter of the documents was discussed at length during the testimony of Turner without objection. For all of the reasons stated above, appellants' issue is overruled.
 Factual Sufficiency
 The Texas Supreme Court's opinion directs this Court to consider the factual sufficiency issues raised by appellants and not heretofore addressed. In reviewing the initial briefing filed by appellants, we have identified a challenge to the factual sufficiency of the evidence to support the jury's finding of fraud in connection with the execution of the MSA. Specifically, appellants argue that the evidence was overwhelming that appellants intended to perform pursuant to the terms of the MSA.
Standard of Review
 In reviewing a challenge to the factual sufficiency of the evidence to support an adverse jury finding on an issue upon which the opposing party had the burden of proof, we will set aside the jury's finding only if the evidence supporting the same is so weak as to be clearly wrong and manifestly unjust. See Int'l Metal Sales, Inc. v. Global Steel Corp., No. 03-07-00172-CV, 2010 Tex. App. LEXIS 2201, at *14-15 (Tex.App. -- Austin Mar. 24, 2010, pet. denied) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)). In making this determination, we are instructed to consider, weigh, and examine all of the evidence in the record, both supporting and against the finding. See Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). Additionally, we are mindful that, when we apply these standards of judicial review in a factual sufficiency scenario, it is the jury's province to judge the credibility of the witnesses and the weight to be given their testimony. See Walter Baxter Seed Co. v. Rivera, 677 S.W.2d 241, 244 (Tex.App. -- Corpus Christi 1984, writ ref'd n.r.e.). Likewise, it is the jury's duty to resolve any conflicts in the testimony. Id.
Analysis
 The evidence presented to the jury regarding fraud in the execution of the MSA revolved around actions that Turner took after the MSA had been signed. Specifically, the steps Turner took to effectuate the MSA. Testimony revealed that the attorney then representing appellants continued to question whether Turner intended to fund the $100,000 requirement of the MSA. Much of the evidence centered on Turner's insistence that he was going to fund the requirement but that other things needed to happen. Ultimately, the attorney formed a conclusion that Turner had no intent to effectuate the MSA and so testified. When a timeline is constructed regarding the events leading up to the failure of the MSA to be completely funded, there was evidence presented to the jury that Turner was consulting with bankruptcy attorneys in another city at the same time he was insisting to his trial counsel that he intended to abide by the MSA. Most of the testimony highlighted by appellants in their brief that contradicts the jury's answer to the fraud question consists of Turner's self - serving statements of what he intended to do. From a total review of all of this evidence, it is clear that the issue was resolved based upon the credibility of the witnesses and the weight to be given their testimony. This is the singular province of the jury. Id. Likewise, resolving those conflicts in the evidence was the duty of the jury. Id. Based upon these considerations, we cannot say that the answer of the jury to the question about fraud was clearly wrong and unjust. See Int'l Metal Sales, Inc., 2010 Tex. App. LEXIS 2201, at *14-15. Accordingly, we overrule appellants' issue regarding the factual sufficiency of the evidence to support the jury's fraud finding.
 Damages and Remittitur
 Next, we turn to the issue of damages as determined by the jury. In our original opinion, we held that there was no evidence to support the award of damages. See Rancho La Valencia, Inc., 253 S.W.3d at 736. The Texas Supreme Court disagreed and held that, under the "benefit-of-the-bargain" measure of damages, appellees suffered some damages in the categories of: 1) attorney's fee incurred because of the Rancho bankruptcy; 2) damages from Rancho's refusal to permit the sale of the property after the execution of the MSA; 3) damages arising from the refusal of Rancho to fund the $100,000 pursuant to the MSA; and 4) damages suffered due to loss of the forbearance agreement at OmniBank. However, the Supreme Court further found that the damages awarded were calculated incorrectly, and invited this Court to order a remittitur or to order a new trial on the issue of damages. Aquaplex, Inc., 297 S.W.3d at 777. Because of the state of the record, we will remand this matter to the trial court for a new trial on damages. See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 51-52 (Tex. 1998). Because of our disposition of this matter by remand for a new trial on damages, any determination of punitive damages by us at this time would be speculative. Accordingly, the issue of the amount of punitive damages must be addressed by the trial court.
 Conclusion
 Having overruled all of Rancho's issues regarding liability and sufficiency of the evidence, we affirm the judgment of the trial court on liability for fraud in the execution of the MSA, but remand to the trial court for a new trial on the issue of damages, including the amount of punitive damages.

 Mackey K. Hancock
 Justice