# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10500

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2018

Lyle W. Cayce
Clerk

SEISMIC WELLS, L.L.C.,

     Plaintiff - Appellee

v.

SINCLAIR OIL AND GAS COMPANY,

     Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:15-CV-148

Before REAVLEY, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

After the district court tossed out Seismic Wells, L.L.C.'s claims at trial, Sinclair Oil & Gas Co. sought attorneys' fees under a contractual prevailing party provision. The district court denied that fee request. We AFFIRM.

I.

Years before these parties got together, Seismic agreed to a long term oil and gas lease that made it the sole operator on the Miller Ranch in west Texas.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10500

Under that arrangement, Seismic could partner with oil companies to drill wells, but the right to operate would revert to Seismic when those companies stopped drilling.

In 2005, Seismic signed a participation agreement with Sinclair Oil Corporation (a precursor to Sinclair Oil & Gas). Sinclair Corporation purchased a 37.5% stake in the Miller Ranch lease and had the option to assume operations; Seismic shared 3D seismic data for the lease with Sinclair; and the parties both agreed to fund the drilling of certain wells and split other expenses in proportion to their ownership interests.

While the initial agreement was in effect, Sinclair Corporation conveyed its interest in the lease to Sinclair Oil & Gas through the conduit entity Sinclair Companies.[1] In 2006, Seismic and Sinclair entered into a replacement participation agreement under which Sinclair assumed lease operations and paid Seismic for an additional ownership interest of nearly 16%. At the same time Seismic and Sinclair finalized a Joint Operating Agreement (JOA) that provided additional detail regarding the responsibilities and liabilities of the parties in developing the lease.

After discovering that Sinclair was marketing its interest, including the right to operate wells on the lease, Seismic sought assurances that Sinclair would fulfill its obligations under the agreements. When those assurances were not forthcoming, Seismic and its principal Barry Tranckino filed suit against the three Sinclair entities and executive/director Ross Matthews. The first amended complaint alleged 17 counts, including claims of fraud, breach of contract, conspiracy, tortious interference, defamation/libel, and business disparagement.[2] At the conclusion of the plaintiffs' case at trial, the court

---

[1] Going forward, we refer to Sinclair Oil & Gas as Sinclair.

[2] The district court dismissed with prejudice Seismic's promissory estoppel claim (Count 9). And Sinclair did not seek to recover fees sustained defending against the tortious

## No. 17-10500

granted defendants' motion for judgment as a matter of law.

The Sinclair entities and Matthews then sought just over $1 million in attorneys' fees incurred defending against Seismic's claims. Defendants contended they were entitled to fees pursuant to the JOA's prevailing party provision. That provision says, "In the event any party is required to bring legal proceedings to enforce any financial obligation of a party hereunder, the prevailing party in such action shall be entitled to recover . . . a reasonable attorney's fee."

The court denied the motion for three reasons: (1) the defendants failed to properly plead under Federal Rule of Civil Procedure 9(g); (2) the prevailing party provision does not apply because Seismic's suit was not a legal proceeding brought to enforce a "financial obligation under the JOA"; and (3) Sinclair did not adequately segregate its fee to isolate the work performed defending fee-eligible claims.

## II.

Because we agree with the district court's second reason—that the JOA's prevailing party provision does not support an award of fees—it is the only one of the three issues we need to address. Of course, Sinclair prevailed when it obtained a full dismissal of Seismic's claims, a decision our court has now affirmed. *See Seismic Wells, L.L.C. v. Sinclair Cos.*, No. 17-10373, 2018 WL 4191020, at *4–8 (5th Cir. Aug. 31, 2018) (upholding that judgment). But prevailing party status is not enough. The question it whether it prevailed in a lawsuit seeking "to enforce any financial obligation of a party" under the JOA.

---

interference, defamation/libel, and business disparagement claims (Counts 13–16). So those claims are not relevant to this appeal.

No. 17-10500

A.

We first address whether Seismic sued to "enforce" an obligation. Counts 1–3, 5, 7–8, and 10–11 of the amended complaint alleged fraud that induced the plaintiffs to sign the replacement participation agreement and JOA.[3] Those claims sought to void the agreements, not enforce them. Because the fraud claims sought to render the contracts *un*enforceable, they do not come within the scope of the fee provision. *Cf. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (reaffirming "that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself").

Seismic did allege, however, that Sinclair breached the initial participation agreement (Count 6) and its replacement (Count 12). And claims for breach of contract are the usual way parties look to enforce agreements in litigation. So those two claims at least clear the "enforce" hurdle to fee recovery.

B.

But the fee provision provides more obstacles. It does not apply unless the claims were brought to enforce the JOA. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 661 (Tex. 2009) (recognizing that "*hereunder*" means under "*this Contract*"). That easily disposes of Count 6, which alleged breach of the *initial* participation agreement signed over a year before the JOA. *See Fleet Oil & Gas, Ltd. v. EOG Res., Inc.*, 2014 WL 2159537, at *6 (Tex. App.—Waco May 22, 2014) (denying fees under a nearly identical provision because EOG asserted claims based on "an additional, separate

---

[3] There is no Count 4 in the first amended complaint, though Count 4 in the original complaint alleged fraudulent concealment, which we address and reject as a basis for fees like the other fraud counts.

4

agreement," never raising or prevailing on claims permitting recovery under the JOA).

That same problem also applies to Count 12, as it alleged breach and anticipatory breach of the replacement participation agreement. Though Seismic's complaint indicated that the JOA was "expressly incorporated into the Replacement Participation Agreement," it was in reality attached to the contract as "Exhibit 'C' to that certain first agreement dated November 1, 2006." Exhibit "A," by contrast, was "[a]ttached to *and made part of* that certain Participation Agreement." (emphasis added). Moreover, Exhibit "A" lists the "[l]eases [s]ubject to the Participation Agreement *and* Joint Operating Agreement," suggesting their separateness. (emphasis added). The replacement participation agreement and JOA are not one and the same. *See Seismic Wells*, 2018 WL 4191020, at *2 (recognizing that *in addition to* the replacement agreement the parties executed the JOA and an "Assignment and Bill of Sale" the same day).

It would seem then that Count 12, like all the others, cannot provide a basis for recovering fees. But one wrinkle remains. Count 12 also alleges that Sinclair breached *the JOA* by refusing to assign Seismic a leaky well or operate that well on its terms. As a result of the leak, water corroded the well's inner casing. This portion of Count 12 thus did seek to enforce the JOA.

## C.

But that is not enough to get Sinclair across the finish line. The allegations must be seeking to enforce a "financial obligation."[4]

---

[4] Seismic's contention that Sinclair only sought fees incurred defending against the *fraud* claims is without merit. In its motion Sinclair did repeatedly ask for fees related to the "fraud-based claims." But in discussing those claims, Sinclair specifically pointed to Seismic's allegation in Count 12 about the well assignment. Moreover, while Sinclair explicitly noted that it was *not* seeking fee recovery on the tortious interference or defamation claims, it did no such thing with respect to breach.

No. 17-10500

One court has evaluated "financial obligation," which the JOA does not define, in the context of the same provision. It concluded that the term's ordinary meaning "requires some nexus to a monetary or pecuniary obligation of the party." *In re WBH Energy, LP*, 2016 WL 3049666, at \*12–13 (W.D. Tex. Bankr. May 20, 2016) (citing Black's Law Dictionary). The defendant in that case had a financial obligation under the JOA to pay its share of joint interest billings as well as vendors and suppliers; if it had been sued for defaulting on those obligations and lost, its counterparty could have recovered fees. *Id.* at \*13. But instead the primary remedy the plaintiff sought and the only one it obtained was injunctive (removing defendant as an operator). *Id.* at \*14. The court held that preserving rights—including lien and operatorship ones—is a "far, far cry" from enforcing a financial obligation, so the plaintiff could not recover fees. *Id.* at \*15; *see also WBH Energy, L.P.*, 708 F. App'x 210, 211–12 (5th Cir. 2018) (affirming the bankruptcy court and agreeing with its analysis).

Although Seismic sought monetary damages, that does not mean it was enforcing a financial obligation. Damages are sought in lawsuits for various types of injuries. If, for example, water from a rainstorm damaged a homeowner's property, she could seek damages from a contractor who had improperly fixed the leaky roof. But that does not make the contractor's duty to fix the roof financial in nature.

Seismic believed the leaky but still-productive well should be repaired, like many others in that area with casing leaks, whereas Sinclair thought that it should be plugged and abandoned. Seismic sued after it had elected to take over the well but Sinclair declined to reassign it. Turning over operatorship rights and running the well on Seismic's preferred terms are not *financial* obligations. Sinclair did not refuse to make some payment specified in the agreement. Because the purported obligation to turn over the well was not financial, Sinclair cannot obtain fees on this remaining claim.

No. 17-10500

* * *

We AFFIRM the district court's denial of attorneys' fees.