

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00327-CV

———————————————

TEXAS REAL ESTATE COMMISSION, Appellant

V.

RYAN CHANCE NEEL AND AMANDA NEEL, Appellees

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2020-003686-3

Before Sudderth, C.J.; Wallach and Walker, JJ.
Opinion by Justice Walker

## OPINION

After obtaining summary judgment against a licensed realtor for fraud and violations of the Texas Real Estate License Act (the Act), Appellees Ryan and Amanda Neel applied for the judgment to be paid out of the real estate recovery trust account (the fund). *See* Tex. Occ. Code Ann. § 1101.601. The trial court granted their application and ordered that they be paid $50,000 from the fund. In a single issue on appeal, Appellant Texas Real Estate Commission (TREC) contends that the Neels were not entitled to have their actual damages paid out of the fund because they were not out-of-pocket losses. *See id.* §§ 1101.601, 1101.604, 1101.608 (providing that TREC shall maintain and manage the fund and act to protect it "from spurious or unjust claims").

We will hold that the Neels' actual damages and related pre-judgment interest are not recoverable from the fund and will modify the trial court's order accordingly. However, we will affirm the trial court's award of $11,500 in attorney's fees and $452 in court costs, modify the order accordingly, and will remand the case for the trial court to determine the reasonable amount of additional attorney's fees.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

The Neels entered into a real estate contract to purchase a residential property from LT Equity Investments, LLC (LT Equity).[1]  The listing agent for the property was Lisa Turnbow, who was also the managing member of LT Equity—a fact that she did not disclose to the Neels.  In reliance on this contract and other representations made by Turnbow, the Neels agreed to lease their then-current home to a third party.  The lease was set to commence after the Neels closed on their contract with LT Equity.  But, despite the contract with the Neels, Turnbow sold the property to another third party who offered more money.

The Neels sued Turnbow, LT Equity, and Omnikey Realty, LLC,[2] alleging various contract causes of action, fraud, negligent misrepresentation, and violations of the Act and the Texas Deceptive Trade Practices Act.  They then moved for partial summary judgment against Turnbow and LT Equity in which they requested $50,881 in damages for (1) the difference between the contracted price and the property's fair market value at the time the contract was breached ($33,001) and (2) the lost rental income and equity with respect to their then-current home ($20,880).  They also requested costs of court, pre- and post-judgment interest, and $11,500 in attorney's

---

[1]The only money paid by the Neels pursuant to this transaction was $3,715 in earnest money, all of which was returned to them by the title company.  They did not seek this amount as damages in their suit.

[2]Omnikey Realty, LLC, was Turnbow's sponsoring broker.

fees. The trial court granted the Neels' summary judgment in its entirety and awarded them "all relief requested." After writs of execution were returned *nulla bona* and the judgment lien was perfected, the Neels applied for an order directing the judgment to be paid out of the fund. *See id.* 1101.606(a)–(b). In their application, the Neels sought (1) $50,881 in actual damages; (2) $11,500 in attorney's fees as provided in the judgment and an additional $500 for attorney's fees incurred "in connection with the filling and pursuing" of the application; (3) $452 in court costs; and (4) pre- and post-judgment interest. TREC objected to the application, raising the same arguments as those asserted on appeal.

The trial court granted the Neels' application and found that they were entitled to payment out of the fund for $50,881 in actual damages, $11,500 in attorney's fees, $3,604.07 in pre-judgment interest, $452 in court costs, post-judgment interest, and additional attorney's fees in connection with filing and pursuing the application. The trial court did not, however, make a finding as to the amount of the post-judgment interest or the additional attorney's fees, ostensibly because it ultimately ordered that the fund pay a total of $50,000 to the Neels—the maximum payment allowed in this case. *See id.* § 1101.610(a). TREC appeals from this order.

## II. RELEVANT LAW

### A. GOVERNING STATUTES

The Act prohibits licensed real estate brokers from taking certain actions, including engaging in fraudulent or dishonest behavior while engaged in real estate

4

brokerage. *Id.* § 1101.652(a-1), (b). TREC is required to maintain the fund, the purpose of which is "to *reimburse* aggrieved persons who suffer *actual damages* caused by an act described by Section 1101.602 committed by . . . a license holder[.]" *Id.* § 1101.601(a)(1) (emphasis added). Section 1101.602—entitled "Entitlement to *Reimbursement*"—reiterates that the fund is available to *reimburse* aggrieved persons when a license holder engages in violative conduct. *Id.* § 1101.602 (emphasis added). Section 1101.610(a) provides that payments from the fund "for claims, including attorney's fees, interest, and court costs, arising out of a single transaction may not exceed a total of $50,000, regardless of the number of claimants." *Id.* § 1101.610.

## B. CASELAW

In *Pace v. State*, the Texas Supreme Court interpreted Section 1101.601's predecessor statute that provided that the fund be used "for *reimbursing* aggrieved persons who suffer *monetary* damages." 650 S.W.2d 64, 65 (Tex. 1983). The court drew from Black's Law Dictionary to define "reimburse" as "'to pay back, to make restoration, to pay that expended.'" *Id.* at 65 (citing Black's Law Dictionary 1157 (5th ed. 1979)). Based on this definition, the court held that punitive damages were not available out of the fund because the Act "provides that the fund is to be used to *pay back* the monetary damages suffered by the victims of an unscrupulous real estate agent or broker." *Id.* (emphasis added); *see Tex. Real Est. Comm'n v. Murphy*, No. 02-22-00199-CV, 2023 WL 2926411, at *3–4 (Tex. App.—Fort Worth Apr. 13, 2023, no pet. h.) (mem. op.) (explaining that, though the legislature changed "monetary damages"

5

to "actual damages" after *Pace*, it was significant that it did not also change the reimbursement language).

Following *Pace*, the Dallas Court of Appeals held—in a case decided after the Act was amended to allow for "actual" rather than "monetary" damages—that a person could not recover from the fund for "lost profits and deception." *Arlington Equities, Inc. v. Tex. Real Est. Comm'n*, 765 S.W.2d 472, 473 (Tex. App.—Dallas 1988, writ denied). The court reasoned that, because such damages did not constitute "out-of-pocket" losses, the person had "expended nothing for which it was entitled to be reimbursed" from the fund. *Id.*

Similarly, we recently held that a person is not entitled to recover mental anguish damages from the fund. *Murphy*, 2023 WL 2926411, at *9. In *Murphy*, we stated that "[t]he 'reimbursement' language in the statute has already been construed by the Texas Supreme Court" and that this construction "does not encompass payment for damages that serve any purpose other than reimbursement." *Id.* at *4. Thus, even though mental anguish damages are generally understood as actual damages that compensate a person for their harm, they are not payable out of the fund because "they do not 'pay back' the [person] for something [the person] expended." *Id.*

## III. DISCUSSION

TREC's sole contention on appeal is that, due to *Pace*'s construction of the reimbursement language from the Act, the fund is available only to reimburse out-of-

6

pocket money that is expended by an aggrieved person. According to TREC, because the Neels' actual damages do not constitute such expenditures, the trial court erred in requiring that they be paid from the fund. TREC requests that we reverse the entirety of the trial court's order. The Neels argue that they are entitled to all of their damages paid from the fund because the Act does not limit recovery to only out-of-pocket expenditures but clearly allows for recovery of all unpaid actual damages.

### A. THE NEELS DID NOT EXPEND MONEY ENTITLING A REIMBURSEMENT OF DAMAGES FROM THE FUND

The Neels are correct that the Act allows a person to recover their actual damages from the fund. Tex. Occ. Code Ann. § 1101.601. And the parties do not dispute that the Neels' awarded damages (i.e. benefit of the bargain and lost rental income) fall within generally recognized categories of actual damages. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49–50 (Tex. 1998). However, the Act—as construed by *Pace* and its progeny—also makes it clear that recovery of one's actual damages from the fund is available only to reimburse or "pay back" money that the person actually expended. Tex. Occ. Code Ann. § 1101.601; *Pace*, 650 S.W.2d at 65; *Murphy*, 2023 WL 2926411, at *3–4; *Arlington Equities*, 765 S.W.2d at 473. Because the Neels' actual damages were not awarded for money that they had expended—the parties agree that the only money they expended was their earnest money, which was returned to them by the title company—they are not entitled to have these damages paid out of the fund. Thus, we sustain TREC's

issue insofar as it complains that the Neels' $50,881 in actual damages and the related $3,604.07 in related pre-judgment interest were not payable out of the fund, and we modify the trial court's order to delete these amounts. *See Murphy*, 2023 WL 2926411, at *4 (modifying order for payment out of the fund to delete mental anguish damages).

## B. ATTORNEY'S FEES AND COSTS ARE AVAILABLE

Our discussion does not end there, however, because the Neels were also awarded attorney's fees and costs that are available to them from the fund.[3] *See* Tex. Occ. Code Ann. § 1101.610(a); *Murphy*, 2023 WL 2926411, at *9 (noting that the Act's "authorization for awarding reasonable attorney's fees is separate from the provision for reimbursement of damages"). Section 1101.606 allows an aggrieved person to "file a verified claim" and to apply for "an order for payment from the trust account of the amount unpaid on the judgment." Tex. Occ. Code Ann. §§ 1101.606(a), (b). And Section 1101.610(a) provides that such claims specifically include attorney's fees and costs. *Id.* § 1101.610(a).

The trial court's order awarded the Neels $11,500 in attorney's fees for fees incurred before the filing of their application and $452 in related court costs.[4] The trial court also found that the Neels were entitled to additional attorney's fees incurred

---

[3]TREC did not address the issue of attorney's fees or costs in their brief.

[4]There is no dispute that the underlying judgment remains unpaid.

8

for filing their application for payment from the fund, but it did not make a finding as to the reasonable amount of these fees. *See* Tex. Occ. Code Ann. § 1101.610(d) (providing that "[a] person receiving payment from the trust account is entitled to receive reasonable attorney's fees in the amount determined by the court"). For these reasons, we affirm the portion of the trial court's order awarding the Neels $11,500 in attorney's fees and $452 in court costs, thus modifying the order to reflect an award of $11,952 from the fund. And we remand for further proceedings to determine the reasonable amount of any additional attorney's fees.

## IV. CONCLUSION

Having held that the Neels' actual damages are not recoverable from the fund, we modify the trial court's order to delete their actual damages and related pre-judgment interest. We affirm the portion of the trial court's order awarding them $11,500 in attorney's fees and $452 in court costs, modify the judgment to reflect an award of $11,952 from the fund, and remand to the trial court for proceedings consistent with this opinion.

/s/ Brian Walker

Brian Walker
Justice

Delivered: May 18, 2023

9